

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1511-11

---

**THE STATE OF TEXAS**

**v.**

**GILBERT DUARTE, Appellee**

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR  COUNTY

---

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and ALCALA, JJ., joined.  KELLER, P.J., concurred.

O P I N I O N

Appellee, Gilbert Duarte, was charged with possession of cocaine found during a

search of his house that was made pursuant to a warrant.  The affiant police officer relied

upon information provided by a first-time informant who was providing information with the

expectation of leniency on his pending criminal charges.  We agree with the trial judge, who

found that the affidavit in this case failed to provide the magistrate with a substantial basis

for concluding that probable cause existed to search Mr. Duarte's home.  We therefore reverse the court of appeals, which had itself reversed the trial judge's order granting appellee's motion to suppress.[1]

I.

Gilbert Duarte was charged in a two-count indictment with possession of more than four grams, but less than two hundred grams, of cocaine.  He filed a motion to suppress, alleging that the search-warrant affidavit authorizing the search of his home was not supported by probable cause. At the hearing on the motion, Mr. Duarte argued that the affidavit did not meet Fourth Amendment requirements because it was based solely upon a tip from a first-time informant[2] looking for "a deal" on his own pending criminal charges.

The warrant in this case was supported by Detective Phillips's two-page affidavit:

> Before me, the undersigned authority, a Magistrate, Bexar County, Texas, on this day personally [a]ppeared Detective Roan Phillips #2421, who being by me duly sworn upon oath, deposes and says: That he has a good reason to believe and does believe that a certain place in Bexar County, Texas described as a two story wood frame house, located at and known as and numbered as 10910 Indigo Creek, and any and all garages, outhouses, edifices, structures, openings, and enclosures thereto attached;
>
> In the City of San Antonio, Bexar County, Texas and being the premises under the control and in charge of Gilbert Duarte 08–17–87 is a place where a controlled substance, to wit: Cocaine is unlawfully possessed in violation of

---

[1] *State v. Duarte*, No. 04–11–00040–CR, 2011 WL 3849461, *3 (Tex. App.—San Antonio Aug. 31, 2011) (not designated for publication).

[2] We use this term because the court of appeals used it and because it is a good shorthand for referring to an informant of unknown and untested reliability.

the Texas Health and Safety Code, and that such belief of the affiant is founded upon the following information: Affiant has been a San Antonio police officer for over fourteen years. During my tenure I have conducted narcotic investigations for 4 years and 9 months. Affiant did on the 28th day of September, 2008, *receive information from a credible individual who is currently facing pending criminal charges and provided the information with the expectation that his/her cooperation with law enforcement would, if proven valid, be called to the attention of authorities, for the possible dismissal of charges, or a favorable plea bargain sentence.*

*Law enforcement officers other than what has been stated have not promised the cooperating individual anything in exchange for his/her information. I believe that in this instance it adds to the credibility of the individual, because he/she will not benefit if his/her information does not prove valid.*

*I explained to the cooperating individual that it jeopardizes his/her opportunity for leniency if law enforcement believes or discovers that he/she has provided incorrect information in a bad faith attempt to obtain leniency. The credible individual's statement to me that the information is true enhances the probability that the information is correct.*

*I also explained to the credible individual Texas Penal Code Statue 37.08, False reports to peace officer. Describing the possible criminal penalties for giving false information to law enforcement. The credible individual said he/she understood, and continued to maintain that the information is correct.*

*I know that this credible individual is familiar with various controlled substances, to include cocaine, and he/she knows how cocaine looks and smells, and how it is packaged, sold and used. The credible individual has demonstrated his/her knowledge to me in conversation and this knowledge is consistent with my own experience and knowledge regarding this type of controlled substance.*[3]

The credible individual stated that he/she had observed Gilbert Duarte 08–17–87 in possession of cocaine within the past twenty-four hours at 10919 Indigo Creek. I conducted computer research on the premises where I was able to confirm that Gilbert Duarte 08–17–87 does indeed reside at 10919 Indigo Creek. Gilbert Duarte 08–17–87 has given that address as his residence on a

---

[3] The emphasized language is the exact same language, word-for-word, as that used by a different officer-affiant in *Pardo v. State*, Nos. 04–08–00628–CR, 04–08–00629–CR, 2009 WL 1706760 (Tex. App.—San Antonio June 17, 2009, pet. ref'd) (not designated for publication), to describe the first-time informant in that case.

traffic ticket that he received on 05–03–08.

Based on the information, affiant asks that a warrant be issued to search the above-described premises for to wit: cocaine, which is unlawfully possessed by the aforesaid Gilbert Duarte 08–17–87 at the above-described premises. And to arrest the above described person and any other parties found on said premises or making their escape therefrom, where said parties are found to be in possession of the above described controlled substance or any other controlled substance in violation of the Texas Health and Safety Code.

At the motion-to-suppress hearing, appellee contrasted the affidavit in this case to that held sufficient in *Pardo v. State*. *Pardo* also involved a first-time informant and set out precisely the same boilerplate language concerning the informant as in this case. But, as appellee pointed out, the affidavit in *Pardo* had the following additional information:

> The credible individual also positively identified the listed location. The credible individual positively identified the named individual from a mug shot from the SAPD database. The credible individual also describe[d] the vehicle the named individual uses to sell his narcotics, (brown Ford Expedition). Pardo, Victor has the listed address in the SAPD master name file. Pardo, Victor is currently on probation for possession c/s w/int deliver 4-200 g. Surveillance was conducted at the listed location and numerous vehicles were seen arriving at the location and then leaving a short time later, this being consistent with drug transactions.[4]

In her factual findings, the trial judge referred to *Pardo* and the boilerplate language concerning the first-time informant in both affidavits, but noted,

> The defendant points out, and the court finds, that in this case, unlike in *Pardo*, there is no added paragraph in the affidavit setting out surveillance of the defendant's house, separate identification of the defendant, separate identification of the car used by the defendant, or information regarding the defendant currently being on probation for a drug offense.

---

[4] *Id*. at *2.

The trial judge granted Mr. Duarte's motion to suppress. She concluded that the affidavit in this case did not contain sufficient information to support a finding of probable cause: "The magistrate in this case was only presented with information the detective obtained from the informer, and was not presented with other verifying information other than determining that the defendant gave the address as his residence on a traffic ticket he received in 2008."

The State appealed, and the court of appeals reversed. Characterizing this as a "close issue," the court held that, under the "great deference" standard, the magistrate had a substantial basis for concluding that probable cause existed.[5] The court stated that it was reasonable for the magistrate to conclude that the informant's credibility was demonstrated by the statements in the affidavit that the informant would benefit only if the information was correct, and that false information would jeopardize the informant's ability to have a favorable plea bargain or the pending charges dismissed.[6] Likewise, the court concluded that the magistrate could reasonably have found the information reliable based on the affiant's statement that the informant (1) demonstrated his knowledge about drugs to the officer-affiant, and (2) personally saw the cocaine at the premises within the past twenty-four hours.[7]

---

[5] *Duarte*, 2011 WL 3849461, at *3.

[6] *Id.* Of course, that would be true of any first-time informer who provides information with the expectation of leniency in his pending criminal charges. The court noted that precisely the same verbiage was used in the *Pardo* affidavit, but did not otherwise comment on the use of these boilerplate paragraphs applicable to all first-time informants who have pending charges against them.

[7] *Id.*

We granted review to examine whether a tip by a confidential informant of unknown reliability, standing virtually alone, provides a sufficient basis for a magistrate's probable cause determination.[8]

II.

The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location.[9]  The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant.[10] Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location.[11] This is a flexible, nondemanding standard.[12]

---

[8] We granted review of appellee's sole ground for review:
The analysis performed by the Fourth Court was erroneous in its application of the law to the facts to such a degree that the Fourth Court essentially provided no appellate review. The opinion glossed over the problems with the magistrate's finding of probable cause, notwithstanding that the supporting affidavit was minimal at best, failing to put in the most basic information, without which a magistrate cannot possibly make a valid and credible determination of probable cause for a search warrant.

[9] *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); U.S. CONST. amend IV; Tex. Const. art. I, § 9.

[10] *Massachusetts v. Upton,* 466 U.S. 727, 733 (1984); *Rodriguez*, 232 S.W.3d at 60.

[11] *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

[12] *McLain*, 337 S.W.3d at 272.

Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but a magistrate's action cannot be a mere ratification of the bare conclusions of others.[13] A magistrate should not be a rubber stamp. "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued."[14]

In *Aguilar v. Texas*,[15] the Supreme Court stated that a review "of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.'"[16] Therefore, even in close cases we give "great deference" to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than make warrantless searches and later attempt to justify their actions by invoking consent or some other exception to the warrant requirement.[17]

After reviewing the supporting affidavit realistically, and with common sense, a reviewing court must uphold the magistrate's decision so long as the magistrate had a

---

[13] *Gates*,  462 U.S. at 239;  *Rodriguez*, 232 S.W.3d at 61.

[14] *Gates*,  462 U.S. at 239.

[15] 378 U.S. 108 (1964).

[16] *Aguilar*, 378 U.S. at 110–11 (quoting *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932)).

[17] *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Gates*, 462 U.S. at 236.

substantial basis for concluding that probable cause existed.[18]  The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit.[19]

### III.

The present affidavit is based almost entirely on hearsay information supplied by a first-time confidential informant.  When the Supreme Court abandoned the two-pronged test established by *Aguilar* and *Spinelli* and reaffirmed the totality-of-the-circumstances analysis that traditionally informed probable-cause determinations, the Court emphasized that corroboration still matters:

> Our decisions applying the totality-of-the-circumstances analysis . . .  have consistently recognized the value of corroboration of details of an informant's tip by independent police work. In *Jones v. United States*, we held that an affidavit relying on hearsay "is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented."[20]

The issue in this case is whether the magistrate had a substantial basis for crediting the informant's hearsay.  The court of appeals relied on the affidavit's boilerplate language to conclude that the magistrate acted within his discretion in finding the informant credible: he has pending charges; he is hoping for a dismissal or favorable plea bargain; he knows he

---

[18] *Gates*, 462 U.S. at 236, 241; *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012).

[19] *Rodriguez*, 232 S.W.3d at 62.

[20]  *Gates*, 462 U.S. at 241-42 (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960)).

will not benefit unless the information provided is valid; and he knows the criminal consequences for giving false information.[21]  The court also relied on boilerplate language to demonstrate the "'reliability' of the information (how did the informant know the substance was cocaine)": In his conversation, the informant demonstrated a knowledge about drugs that was consistent with affiant's knowledge about drugs.[22]  That is, the informant knows cocaine when he sees it.

The State adds that the magistrate could have reasonably inferred that the affiant-officer "interviewed the individual at length" to establish that the individual was truthful and reliable.[23] And the State points out that the officer verified the address given as appellee's.[24] Both the court of appeals and the State fault the trial judge for focusing on facts that the affidavit did not contain, rather than the facts that it did contain.[25]

---

[21]  *Duarte*, 2011 WL 3849461, at *3.

[22] *Id.*

[23] State's Response Brief at 8.

[24] *Id.*

[25] *Duarte*, 2011 WL 3849461, at *3 ("Duarte argues that such corroboration of the informant's information is lacking here, as the affiant merely confirmed that Duarte lived at the address indicated by the informant. The trial court apparently agreed with Duarte, because it found significant the affiant's failure to corroborate the informant's information in any other manner. However, the proper standard of review is not to determine whether all the information that could have been put into an affidavit was actually in the affidavit. Rather, the reviewing court defers to the magistrate's determination, allows all reasonable and commonsense inferences, and decides whether the magistrate's conclusion is supported by the assertions in the affidavit."); State's Response Brief at 10 ("[T]he issue is not whether there are other factors that could have, or even should have, been included in the affidavit or complaint, but rather, whether the combined logical force of facts that are in that specific affidavit, not those that are omitted,

We find that the weight given to the informant's hope for lenient treatment on his own pending charges in return for his "tip" is inappropriate as that is the very characteristic that sets the citizen-informer apart from the informant "from the criminal milieu." Professor LaFave notes that

> courts have quite properly drawn a distinction between such a person [from the criminal milieu] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu.[26]

The citizen-informer is presumed to speak with the voice of honesty and accuracy. The criminal snitch who is making a *quid pro quo* trade does not enjoy any such presumption; his motive is entirely self-serving. The Supreme Court stated in *Illinois v. Gates*,

> if an unquestionably honest citizen comes forward with a report of criminal activity–which if fabricated would subject him to criminal liability–we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.[27]

Federal courts find that probable cause for the issuance of a search warrant exists

---

are sufficient coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found").

[26] 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.3 at 98 (4th ed. 2004) (footnote omitted).

[27] *Gates*, 462 U.S. at 233-34 (citations omitted).

"notwithstanding" an actual or potential *quid pro quo* obtained by a first-time informant in exchange for the information, not "because" of it.[28]  They do so if the tip is corroborated,[29] is a statement against penal interest,[30] is consistent with information provided by other informants,[31] is a detailed first-hand observation,[32] or is coupled with an accurate prediction of the subject's future behavior.[33]  They do so when there is a substantial basis for crediting

---

[28]   See Brian Sheppard, Annotation, *Sufficiency of Information Provided by Confidential Informant, Whose Identity Is Known to Police, to Provide Probable Cause for Federal Search Warrant Where There Was No Indication that Informant Provided Reliable Information to Police in Past—Cases Decided After* Illinois v. Gates, 9 A.L.R.Fed. 2d 1 § 20-21 (2006).

[29]   *See United States v. Clyburn*, 24 F.3d 613, 618 (4th Cir. 1994) ("Although the informant's reliability initially was questionable due to her incarceration, Sergeant Dennis verified the informant's allegations by setting up and monitoring controlled purchases of cocaine.").

[30]   *See United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (CI provided information contrary to her own penal interest–the "indicia of reliability"); *United States v. Buckley*, 4 F.3d 552, 554, 556-57 (7th Cir. 1993) (informant–who wanted to curry favor with the officer who pulled her over for a traffic violation and discovered cocaine–spoke against her penal interest when admitting that she had purchased cocaine from the defendants at least 25 times in the previous six months).

[31] *See United States v. Canfield*, 212 F.3d 713, 720-21 (2d Cir. 2000) ("sufficient corroboration existed. CI-1's statements regarding Canfield's movements and drug activity were corroborated by Detective Thorpe and CI-2.").

[32]   *See United States  v. Stewart*, 337 F.3d 103, 106 (1st Cir. 2003) ("[P]robable cause in the first warrant application, even taking into consideration the omissions [about the informants' criminal charges], could hardly have been stronger. Three days before the search warrant was executed, during a controlled purchase by Creamer that was recorded by agents, appellant asserted that he expected to have 'plenty' of additional cocaine the following Monday, the day of the search. Certainly in the context of the ongoing investigation, which included three previous controlled buys, that statement provided compelling evidence that appellant would be found in possession of cocaine on June 18.").

[33] *See United States v. Wilson*, 964 F.2d 807, 810 (8th Cir. 1992) (probable cause to search established when police surveillance corroborated almost all aspects of the informant's prediction; "The informant told agents where he and Wilson would be that evening, described the

the hearsay.[34] Texas courts apply the same principles.  Citizen informants are considered

inherently reliable; confidential informants are not.[35]

_____

container in which the drugs were stored, and described the car in which the drugs were transported.").

[34] *United States  v. McKeever*, 5 F.3d 863, 865 (5th Cir. 1993) (CI's tip that defendant had purchased the property and built a structure in which he intended to cultivate marijuana could be credited where CI further stated that he has purchased marijuana from defendant on several occasions [and so made a statement against interest], and agent corroborated the purchase of the property and the building of the hydroponic marijuana-growing facility).

[35] *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990) ("In the instant case, the affidavit in support of the search warrant was based on information supplied by police officers and citizens. None of the information was obtained from confidential informants. Thus, the magistrate was entitled to rely on the credibility of the affiant and his sources and the reliability of the information supplied in the affidavit."), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); *Marquez v. State*, 725 S.W.2d 217, 232 (Tex. Crim. App. 1987) ("Appellee alleges that the affidavit must contain some facts to show that the peace officers and other witnesses who provided affiant with the substantive information contained in the affidavit are credible. This argument is entirely without merit. While it is true that such facts must be included when the information contained in the affidavit is given by a confidential informant, as a matter of constitutional law an ordinary citizen as a witness in a case or a police officer is presumed to be reliable and no special showings are required."), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); *West v. State*, 720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names."); *see also State v. Wester*, 109 S.W.3d 824, 826–27 (Tex. App.—Dallas 2003, no pet.) (distinguishing a statement from a named informant under arrest on suspicion of drug offense from an "inherently reliable" statement of average citizen reporting a crime to police); *Morris v. State*, 62 S.W.3d 817, 824 (Tex. App.—Waco 2001, no pet.) ("A magistrate is entitled to rely on information supplied by a private citizen, since, unlike many police informants, they are much less likely to produce false or untrustworthy information."); *Winters v. State*, 897 S.W.2d 938, 941-42 (Tex. App.–Beaumont 1995, no pet.) ("In the instant case, the informant is not a 'snitch.' He is an average citizen who reported a crime. In that particular situation, Texas courts have given a certain deference to the named, private citizen informant. Where a named informant is a private citizen, whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information are inherent.").

Confidential informants–even though culled from the "criminal milieu"–may be considered reliable tipsters if they have a successful "track record."[36]  As Professor LaFave points out, "Lower courts have with virtual unanimity held that a declaration that the informant's past information has led to convictions is a sufficient showing of the informer's credibility."[37]  But tips from anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable.[38]

---

[36] *Dixon v. State*, 206 S.W.3d 613, 616-17 (Tex. Crim. App. 2006) ("[T]he evidence established that the confidential informant was credible and reliable. Agent Gray had known the informant for over a year. The information that he had provided in the past had always been shown to be true and had led to the arrest of at least five drug offenders. Thus, by Agent Gray's testimony, the informant was batting one thousand, at least with respect to five prior occasions. This is an important factor in establishing the credibility of the informant as it may be inferred that the police would not repeatedly act on information from one who has not proven by experience to be reliable.") (footnotes omitted); *Brown v. State*, 243 S.W.3d 141, 146 (Tex. App.—Eastland 2007, pet. ref'd) (evidence that the informant had previously provided reliable information was sufficient to establish his veracity; "magistrate knew that the informant's veracity or reliability was based upon: having provided information that led to the arrest of at least five drug offenders; being lawfully employed; providing the information voluntarily and without any promise or deal; and having always provided true and correct information.").

[37] 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.3(b) at 115, 119 n.85 (4th ed. 2004 & 2010-2011 Supp.) (citing *Dixon v. State*, 206 S.W.3d 613 (Tex. Crim. App. 2006)).

[38] *See State v. Delagarza*, 158 S.W.3d 25, 28 (Tex. App.—Austin 2005, no pet.) (officers corroborated tip from anonymous informer of unknown reliability by collecting–from trash cans outside the residence– "corner bags" that field tested positive for cocaine); *Barton v. State*, 962 S.W.2d 132, 137-38 (Tex. App.—Beaumont 1997, pet. ref'd) ("The informant's 'basis of knowledge' was more than sufficient to make up for any 'veracity' deficiency. The informant stated that he/she lived on the premises where the contraband was located, lived with appellant, and had personally been on the premises in question within the past 24 hours. Furthermore, the 'reliability' of the information provided was proven to a significant degree in that the affiant himself tested the contents of the package provided to him by the informant, with the results confirming the fact that the package indeed contained cocaine."); *Knight v. State*, 814 S.W.2d

We agree with appellee that there was no substantial basis for crediting the first-time informant's hearsay statement. Officers failed to corroborate the informant's tip except to confirm appellee's address.[39] The tip was not a statement against interest,[40] nor repeated by

---

545, 548 (Tex. App.— Houston [1st Dist.] 1991, no pet.) ("[I]nformant's basis of information contained in his tip, combined with the independent corroboration, especially of appellant's prior criminal record and his prior methamphetamine sales from the same location, were enough to overcome the fact that the anonymous informant's veracity was unknown. This gave the magistrate a substantial basis to believe that methamphetamine was then located at appellee's apartment.").

[39] *Compare Flores v. State,* 319 S.W.3d 697, 703 (Tex. Crim. App. 2010) (magistrate could reasonably conclude that the informer's tip regarding illegal drugs at the Ramona Circle residence, although perhaps insufficient in itself to establish probable cause to search, was reliable where affiant twice found marijuana stems, seeds, and residue in a garbage can located on the street in front of the Ramona Circle residence) *and State v. Griggs* 352 S.W.3d 297, 304 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("Alone, the tip that cocaine was being 'stored and sold' at the residence is no more than a bare assertion, but the tip combined with the subsequent controlled buy provides facts from which a magistrate could reasonably infer that the sale of cocaine was an ongoing enterprise rather than an isolated incident.") *with Parish v. State*, 939 S.W.2d 201, 204 (Tex. App.—Austin 1997, no pet.) ("We do not think these scant facts [corroborating that defendant's motel room and car were properly identified by the informant] supplied a basis for the tip's reliability. They were ascertainable by anyone who Parish may have been in contact with; for example, he may have related them to the motel clerk when he registered for the room."). The Supreme Court has noted that corroboration of "innocent activity" may be sufficient to support a finding of probable cause, if the "seemingly innocent activity became suspicious in the light of the initial tip." *See Gates*, 462 U.S. at 244-45 & n.3, *quoting Jones v. United States*, 362 U.S. 257, 269-70 (1960).

[40] *Cf. Mejia v. State,* 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (named informant's credibility was reinforced when he admitted to being a drug trafficker; "An admission against penal interest, even by a first-time informant, is a factor indicating reliability.").

other informants.[41]  There was no accurate prediction of future behavior.[42]  This tip was a first-hand observation, but it contained no particular level of detail regarding appellee's premises or his criminal activity.[43]  The tip was: "The credible individual stated that he/she had observed Gilbert Duarte 08–17–87 in possession of cocaine within the past twenty-four

---

[41] *Cf. Jones v. State*, 364 S.W.3d 854 (Tex. Crim. App. 2012) (affidavit established probable cause when officer stated that he had "recently" received information from first confidential informant, and after receiving information, used second CI to make controlled buy).

[42] *Cf. Angulo v. State*, 727 S.W.2d 276, 279-80 (Tex. Crim. App. 1987) (finding probable cause for warrantless automobile search under *Gates,* where the defendant's seemingly innocuous behavior became "suspicious in light of the anonymous tip," especially in light of the prior surveillance of defendant's apartment.).

[43] *Cf. Long v. State*, 137 S.W.3d 726 (Tex. App.—Waco 2004, pet. ref'd).  The affidavit in that case stated, in part:

> Affiant and Detective Tanner have received information on several occasions within the past two months that Carl Long has manufactured as well as possessed methamphetamine speed at his residence in the Brushie Prairie Community. Detective Tanner has received information from a confidential informant hereinafter referred to as (CI) that Carl Long keeps the equipment to manufacture methamphetamine speed at his residence in a hole in the ground next to the house. The CI said that when Long gets ready to manufacture, he removes the lab equipment from the hole outside the house, takes it into the house and cooks the speed. The CI advised that Carl Long is using the Nazi Lab method to manufacture methamphetamine speed. . . . The CI advised Detective Tanner that Long manufactures the speed in the southwest corner of the house which is a bedroom. The CI advised Detective Tanner that Long always has all of the necessary equipment and is able to obtain the necessary chemicals to manufacture Nazi speed.
> On April 8th, 1999, Detective Tanner received information from a confidential informant hereinafter referred to as (CI) that he or she had been by the suspected premises within the last 48 hrs and he or she had observed methamphetamine (speed) being manufactured at the suspected premises by Carl Long and others.

*Id*. at 730-31.  The tip was also corroborated by the detectives' drive-by of the residence where they "smelled a odor of ether around the southwest corner of the residence." *Id.* at 731.

hours at 10919 Indigo Creek." That is it.[44]  How much cocaine did he possess?  A couple of lines worth, laid out at a party and fully consumed?  A kilo?  Where did Mr. Duarte have the cocaine?  In the pocket of his jeans?  Hidden in the attic?  Was it piled on the kitchen table being weighed and packaged for sale?  This is not a case where there is a tip about a methamphetamine lab, or marijuana-growing operation, or crack-cocaine dealing.  In those cases, the tip supports an inference that the criminal activity is ongoing.[45]  Here, as the State acknowledged at oral argument, there is nothing in the affidavit that suggests Mr. Duarte was engaged in drug-dealing.  Indeed, one could plausibly conclude from this affidavit that it was the confidential informer who delivered the cocaine to Mr. Duarte's house.  All we know is that the informant saw some amount of cocaine "in the possession" of Mr. Duarte.

On the one hand, the informant gave a timely, first-hand tip.  On the other hand, the

---

[44]  That may be enough if the informant has a track record and is known to be reliable. We have held as much.  In *Hegdal v. State*, 488 S.W.2d 782 (Tex. Crim. App. 1972), probable cause was based solely on affiant's receipt of information from a confidential informant that the informant had personally observed methamphetamine "at the above described location within 48 hours of the date of the making of this Affidavit." *Id.* at 784. We held that the tip supported the magistrate's finding of probable cause.  But the tip was not from a first-time informant.  Rather, included in the four-corners of the affidavit was the averment:  "Affiant has received information from said reliable and credible informant on previous occasions and such information has proven to be true and correct." *Id.*

[45]  *Jones v. State*, 364 S.W.3d at 859-62 (confidential informant's tip that crack cocaine was being sold out of defendant's residence–corroborated by a controlled buy and previous information from at least two informants that drugs were being sold from the address–"was sufficient to establish probable cause that a continuing drug business was being operated from the residence, a secure operational base"); *Davis v. State*, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006) (informant's tip–considered with crimestopper's tip and affiant officer's statement that on the day the affidavit was prepared, an officer drove past the residence and smelled a strong chemical odor that he has associated with the manufacture of methamphetamine–supported magistrate's decision to issue warrant).

police failed to corroborate the tip except to confirm Mr. Duarte's address. But the fact that Mr. Duarte lives where the informant says he lives does not make his assertion that Mr. Duarte possessed cocaine more reliable. Further, the tip was vague, not an "explicit and detailed description of alleged wrongdoing" that the *Gates* court referenced. There were no facts from which to draw an inference that the referenced "credible individual" actually was a "credible individual." The affiant's *ipse dixit* does not make it so.[46] Under the totality-of-the-circumstances analysis–balancing the relative weights of all the various indicia of reliability (and unreliability) attending the informant's tip–the magistrate here did not have a substantial basis upon which to find probable cause.

We agree with the State that "an affiant's basis for finding the informant reliable need not be of any certain nature."[47] But, whatever its nature, it must be demonstrated within the four corners of the affidavit. Here, the affiant-officer believed that the confidential informant was credible largely because he was a "confidential informant"–a "snitch" with pending criminal charges who wanted to trade a tip for leniency. We decline to equate the reliability

---

[46] *Elardo v. State*, 163 S.W.3d 760, 766 (Tex.App.—Texarkana 2005, pet. ref'd) ("The warrant in this case provides no facts on which the magistrate could conclude that the 'reliable source' is reliable, nor does the warrant contain any corroboration of the informant's information or other indicia of reliability. The warrant only contains the conclusory and bare-bones assertion that the source is reliable."). We agree with appellee that affiant's vouching statement–"The credible individual's statement to me that the information is true enhances the probability that the information is correct"–does nothing to establish the reliability of the informant. Appellee's Petition at 11. Merely because the Cretan Liar says, "My information is true," does not increase the probability that his information is correct.

[47] State's Response Brief at 9.

of a first-time, unnamed informant with that of a named citizen-informant.

The trial judge correctly identified the problem with this boilerplate affidavit: it contained insufficient particularized facts about appellee's alleged possession to allow the magistrate to determine probable cause to issue a search warrant. The trial judge did not err in granting Mr. Duarte's motion to suppress. The judgment of the court of appeals is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

Delivered: September 12, 2012
Publish