**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00319-CR**
**NO. 09-18-00320-CR**
_____

**NOAH ROMERO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause Nos. 18-29098 and 18-29099**

**MEMORANDUM OPINION**

After the trial court denied his motions to suppress in both cause numbers, Noah Romero (Romero or Appellant) pleaded nolo contendere to possession of tetrahydrocannabinol in the amount of at least four grams or more and less than four hundred grams in trial cause number 18-29098 and to possession of marijuana in an amount of five pounds or less and more than four ounces in trial cause number 18-29099. In each case, the trial court deferred adjudication of Romero's guilt, placed

1

him on community supervision for five years, and assessed a $500.00 fine. In appellate cause numbers 09-18-00319-CR and 09-18-00320-CR, Romero argues the trial court erred in denying his motions to suppress evidence in trial cause numbers 18-29098 and 18-29099, respectively, because the affidavit providing the basis of the search warrant did not establish probable cause. We affirm the trial court's judgments.

## Background

Detective Tyler Lewis, a Jefferson County Sheriff's Department narcotic officer, testified at the suppression hearing that in February 2018 he received complaints regarding possible drug activity involving marijuana at three specific apartments at the Briarcliff Apartments in Nederland. Detective Lewis agreed that in their narcotics investigations it is common to receive tips from the community about possible ongoing drug activity and that in this particular case it was decided that a "knock and talk" would be appropriate to determine whether the information was legitimate. According to Detective Lewis, he was not present when the officers from his narcotics team approached and knocked on the door of apartment number 26. When Detective Lewis arrived, he could smell marijuana, and all three subjects were being detained outside of the apartment. Detective Lewis "made contact with [his] sergeant, and [the sergeant] told [Lewis] what to add and what [they] needed[]"

2

for the warrant. Detective Lewis testified that he prepared an affidavit for a search warrant and located a judge to review and sign the warrant.

In Detective Lewis's Affidavit for Search and Arrest Warrant that was admitted into evidence at the suppression hearing, Lewis stated that "[m]arijuana . . . and drug paraphernalia[]" were suspected at "Briarcliff Apartments 1315 N Hwy 347 Nederland, Jefferson County, Texas Apartment #26[,]" that Romero controlled that premises, and that Lewis believed Romero was in possession of marijuana at that apartment. In the affidavit, Lewis averred the following facts, in relevant part, in support of his probable cause for this belief:

> . . . On 2-27-18 Detectives with the Jefferson County Narcotics Task force followed up on a couple complainants[sic] I received about several different people living in apartments in Nederland, Texas [who] openly smoke marijuana outside and the complainant stated they possibly sale[sic] marijuana also. One of the apartments was apartment 26. The complainant stated that Noah Romero lived there and always had foot traffic going in and out of his apartment. Based on my experience as a narcotics detective, I knew this to be a sign of narcotics activity. Today, Detectives knocked at the door of apartment 26 in an attempt to speak with Noah and inform him of the complaint we received. Noah answered the door and stepped outside and closed the door. Detectives smelled a very strong odor of burned marijuana emitting from the inside of the apartment. Detectives informed him of the reason they were there and that they could smell the burned marijuana. Romero made the remark that he wanted them (detectives) to go away and attempted to go back into his apartment and close the door. Detectives detained him and secured the other two subjects inside the apartment so evidence could not be destroyed while a search warrant for apartment #26 could be drafted.

3

Lewis testified that they seized approximately $10,000 cash, 8.07 ounces of marijuana and 7.4 ounces of the THC infused candy.

Sergeant Andrew Jones with the Jefferson County Sheriff's Office Narcotics Task Force testified that Detective Lewis had received a citizen complaint regarding apartment number 26 at the complex and on February 27, 2018, he and two other detectives went to the apartment. He testified that as he and Detectives Miller and Warhola approached the apartment and he was "a couple of feet[]" from the apartment door "[y]ou could smell the odor of burnt marijuana coming from the area of the door." When Sergeant Jones knocked on the door, a white male, later identified as Romero, stepped outside and shut the door behind him. According to Jones, he could smell marijuana coming out of the apartment, which confirmed in his mind that the apartment was the source of the odor of burnt marijuana, and Romero "basically just asked us -- just wanted us to go away." Sergeant Jones testified that Romero stated, "We were just smoking a little[,]" which indicated to Sergeant Jones that there was more than one person smoking inside the apartment. Romero denied consent to search the apartment, the other two officers entered the apartment to do a protective sweep and to ensure evidence would not be destroyed, the other two officers brought the two other occupants out of the apartment in order to preserve evidence, and the other two occupants were detained along with Romero

4

outside the apartment while Detective Lewis secured a warrant. Jones testified that Detective Lewis called about one and a half or two hours later to let the officers know the judge had signed the warrant. According to Sergeant Jones, at some point the officers came out of the apartment and advised that they had located marijuana and tetrahydrocannabinol-infused candy.

Detective Jonta Miller with the Jefferson County Sheriff's narcotics team testified that he did not smell marijuana as he approached the door, but that once Romero opened and shut the door he smelled a "strong odor of burnt marijuana." Miller testified that while doing the protective sweep inside Romero's apartment, he noticed a green leafy substance on a small table with a bong in the living room that would have been visible from the open front door. According to Miller, after the search warrant was issued, he entered the apartment to conduct the search and found in the "front room" the bong and a prescription bottle with the label torn off and pills inside. He also found money in open view in the bedroom on a dresser or table at the foot of the bed and an unopened safe. One of the officers opened a safe located in the bedroom, and there was also more money located by the headrest on the right side of the bed and in Romero's front pocket.

Romero testified that he leases apartment number 26 at Briarcliff Apartments in Nederland and that, on the date the officers testified to, he was "passed out[]" and

"slumped on [his] couch" watching Netflix with two friends when his friend woke him up and told him someone had knocked on the door. According to Romero, he got up and, unaware it was law enforcement, opened the door and saw three officers. Romero admitted at the hearing that he had marijuana in his residence, that he and his friends had "just finished smoking[,]" that the officers "probably smelled" the odor of burnt marijuana in the apartment, and that he did not want the officers to come inside his apartment. He stepped outside, gently closed the door behind him, and inquired as to what the officers wanted. According to Romero, the officers said "It's sheriff, narcotics[,]" Romero asked why they were there, and they told him that there had been "complaints of foot traffic and the smell of odor from [his] apartment and two other ones." Romero testified he refused to give them consent to search his apartment without a warrant and told them he wanted to go back inside his apartment, and that as he tried to grab the doorknob, the officers grabbed him and threw him face-first in the concrete and handcuffed him. According to Romero, the officers removed the two occupants from his apartment in "2 minutes or less[]" and then they all waited outside until Lewis returned with a signed warrant. Romero testified that if he smoked alone he usually smoked outside his apartment, but if he was smoking with friends he would smoke inside his apartment or at one of the other apartments at the same complex.

6

Romero's written motion to suppress in each case stated the following:

The search/seizure carried out by law enforcement against defendant in this case was without a warrant and was predicated on an illegal warrant. The state, therefore, has the burden to prove an exception to the warrant requirement and the legality of the warrant for any evidence seized pursuant to this search/seizure to be admitted and that the evidence was otherwise not seized in violation of the law.

. . .

The evidence made the basis of this case was seized without a valid exception to the warrant requirement and was seized as a direct and proximate result of illegal law enforcement activity to wit: an illegal search warrant.

. . .

This narcotic[s] evidence was seized in violation of defendant's right to be free from unreasonable searches and seizures as guaranteed to him/her under the fourth and fourteenth amendments to the federal constitution, and under Article I, Section 9 of the Texas constitution. The narcotics forming the basis of the present prosecution therefore should be suppressed pursuant to [Texas Code of Criminal Procedure] Art. 38.23(a) as the product of an illegal search and/or seizure.

After the trial court heard the evidence at the hearing, the trial court asked Romero's counsel to explain his position on why the search was improper and Romero's counsel stated, "I rely on the motion that was filed." He then argued that the probable cause warrant was predicated on an improperly issued warrant because it was based on what the officers found when they first entered the apartment prior to obtaining a search warrant, the probable cause affidavit was based on an illegal

7

search and seizure when the officers initiated a "knock and talk" and then seized Romero and handcuffed him, and that the anonymous tip was not corroborated prior to initiating the "knock and talk."

Analysis

Romero's stated issue on appeal asserts the trial court erred in denying the motion to suppress because the search and seizure violated Romero's constitutional protections. Romero argues that "the affidavit made the basis of the warrant did not establish probable cause[,]" and he states several reasons why he believes that affidavit was insufficient to support the issuance of a search warrant. Specifically, he argues that the affidavit is insufficient because it fails to provide a time frame for when the affiant received the anonymous tip regarding the alleged marijuana activity, that the affidavit does not establish that the complaints were directed towards Romero or his apartment, and that "the affiant confessed [at the hearing] that he adds assertions regarding drug paraphernalia into every affidavit whether or not it is correct and true." Additionally, in appellate cause number 09-18-00319-CR, Romero argues that nothing in the affidavit states that there was suspected tetrahydrocannabinol located in the apartment. According to Romero, the search was a warrantless search in violation of his constitutional rights because the affidavit was

8

insufficient to support the search warrant, and no exigent circumstances justified a warrantless entry into Romero's residence.

A motion to suppress is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a). A defendant's appellate contention must also comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Id.*

We conclude that the arguments Romero makes on appeal about the insufficiency of the affidavit do not comport with the arguments he presented to the trial court. Consequently, Romero waived his right to make these arguments because he presented them for the first time on appeal. *See* Tex. R. App. P. 33.1; *Foster v. State*, 874 S.W.2d 286, 289 (Tex. App.—Fort Worth 1994, pet. ref'd) (a challenge to a search warrant affidavit is waived if the reasons why the affidavit is defective vary from the arguments made in the suppression hearing); *see also Glenn v. State*,

9

No. 09-16-00093-CR, 2017 Tex. App. LEXIS 9061, at *8 (Tex. App.—Beaumont Sept. 27, 2017, no pet.) (mem. op., not designated for publication) (appellant waived right to challenge reliability of confidential source because the appellant presented that argument for the first time in his appeal); *Richardson v. State*, No. 01-04-00833-CR, 2006 Tex. App. LEXIS 1633, at *8 (Tex. App.—Houston [1st Dist.] Mar. 2, 2006, pet. ref'd) (mem. op., not designed for publication) ("Appellant neither objected to the trial court nor asserted any complaints concerning the untimely execution of the search warrant and the reliability of the canine unit and has thus waived those complaints on appeal.").

Even if Romero had preserved the complained-of error, we conclude that the trial court did not err in denying the motion to suppress. Probable cause must be found within the "four corners" of the affidavit supporting the search warrant. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). In reviewing whether an affidavit is sufficient, we "must uphold the magistrate's decision [to issue the search warrant] so long as the magistrate had a substantial basis for concluding that probable cause existed." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). "The Supreme Court has repeatedly reminded reviewing courts that they should 'not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.'" *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex.

10

Crim. App. 2007) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a 'substantial basis' for issuing the warrant." *Duarte*, 389 S.W.3d at 354 (citing *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984); *Rodriguez*, 232 S.W.3d at 60)). When reviewing the constitutionality of a search warrant, "even in close cases, we give 'great deference' to a magistrate's determination of probable cause" to encourage law enforcement officials to use the warrant process. *Id*. When reviewing an affidavit that supported the search warrant, the focus of our review should be on the combined logical force of what is included in the affidavit, not on what other facts could have been or should have been included. *Id*. at 354-55.

Romero argues the affidavit is insufficient to establish probable cause because it fails to include the time when the affiant received the anonymous tip about the alleged marijuana activity and it does not show that the complaints about the use of marijuana were directed towards Romero or his apartment. The affidavit indicates that

> On 2-27-18 Detectives with the Jefferson County Narcotics Task force followed up on a couple complainants[sic] I received about several different people living in apartments in Nederland, Texas [who] openly smoke marijuana outside and the complainant stated they possibly sale[sic] marijuana also. One of the apartments was apartment

11

26. The complainant stated that Noah Romero lived there and always had foot traffic going in and out of his apartment.

According to the affiant, one or more complaints were made about marijuana use at the apartment complex and a specific complaint was made about Romero and Romero's apartment. The affiant further indicated the officers decided to knock on Romero's door, and that after Romero opened and closed his door, the detectives "smelled a very strong odor of burned marijuana emitting from the inside of the apartment[,]"[1] and then the detectives detained the individuals while a search warrant could be drafted. Focusing on the combined legal force of the information found within the four corners of the affidavit, we determine the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Duarte*, 389 S.W.3d at 354; *McLain*, 337 S.W.3d at 271.

---

[1] We disagree with Romero's statement in his brief that "The State's testimony established that there was no smell of marijuana emanating from Appellant's apartment." Officer Jones testified he could smell the odor of marijuana coming out of the apartment, which confirmed in his mind that the apartment was the source of the odor of burnt marijuana, and Detective Miller testified that once Romero opened and shut the door he smelled "a smell of strong odor of burnt marijuana." Even Romero admitted at the hearing that the officers "probably smelled" the odor of burnt marijuana in the apartment, and he states in the "Statement of Facts" portion of his appellate brief that the officers "could smell the odor of burnt marijuana emanating from the apartment."

Additionally, Appellant's complaint that the affidavit is invalid because Lewis "confessed [at the hearing] that he adds assertions regarding drug paraphernalia into every affidavit whether or not it is correct and true[,]" is not supported by the record. Lewis testified that in this instance he could not recall what the officers had told him about any paraphernalia they saw during their protective sweep and that

> [t]hey might have told me when they cleared it. I don't recall, though. . . . They might've told me that . . . there was a bong in there on the table. . . . It was a pretty large bong. So, it's probably something - - they probably maybe mentioned it to me.

Lewis explained that he usually references paraphernalia in his search warrants and gave an example:

> . . . If we do . . . a[n] [undercover] buy in a house and our [confidential informant]'s sitting there saying, "Yeah, I saw crack cocaine," . . . in there and they mention anything about pipes or something, we just put the . . . paraphernalia down [in the affidavit]."

As for Romero's argument in appellate cause number 09-18-00319-CR that nothing in the affidavit states that there was suspected tetrahydrocannabinol located in the apartment, it is unnecessary for the affidavit to specifically mention every item of contraband in the warrant that may be seized by the officers during the search because a law enforcement officer may seize anything the officer sees in plain view if the officer has probable cause to believe it constitutes contraband. *See State v.*

*Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010). We overrule Romero's sole

appellate issue. Accordingly, we affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 27, 2019
Opinion Delivered August 21, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.