

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0712-20

### NELSON GARCIA DIAZ, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**KEEL, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

After the trial court denied Appellant's motions to suppress evidence, a jury convicted him of burglary of a habitation and assessed his punishment at 32 years in prison. The court of appeals affirmed the trial court's suppression rulings. *Diaz v. State*, 604 S.W.3d 595 (Tex. App.–Houston [14th Dist.] 2020). We granted review to decide the materiality of misrepresentations in a warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). The misrepresentations here were not material, and one

of the disputed statements was not proven to be false.   Consequently, we affirm the judgment of the court of appeals.

## I.  Overview

Unless otherwise noted, all dates throughout this opinion refer to 2013.

On the night of September 26, Appellant and another man kicked in the front door of a house belonging to a Houston Police officer.   Appellant and the officer exchanged gunfire, and Appellant shot the officer in the leg.   The intruders fled the house, leaving several items behind.   Four days later Appellant was arrested on open warrants and found to be in possession of the three cell phones that are the subject of this appeal.

In 2017 an investigator for the Harris County District Attorney's Office got a warrant to search those three phones.   His affidavit in support of the warrant relied on information from Harris County Sheriff's Office Sergeant David Angstadt.   The disputed part of the affidavit centered on how Angstadt developed Appellant as a suspect. According to the affidavit Angstadt got an anonymous tip that "Jessie" was involved in the home invasion; the tipster gave Anstadt two phone numbers for Jessie; Angstadt asked a federal agent to run the phone numbers through Drug Enforcement Agency databases; and that check showed that one of the numbers belonged to Appellant.

According to testimony before the trial court, however, the anonymous tipster was a confidential informant (CI) for the DEA, and he told a DEA agent that Jessie had committed the home invasion and gave him Jessie's phone numbers.   An agent ran the numbers on his own initiative and connected them to Appellant.   Another agent called

Angstadt and shared with him the information from the CI and the phone check that identified "Jessie" as Appellant.

The *Franks* issue thus revolves around the affidavit's (A) characterization of the CI as an anonymous tipster instead of as a confidential informant, (B) Angstadt's implicit claim that he reached out to the DEA instead of they to him, and (C) his explicit claim that he asked the DEA to check the phone numbers when they did it without his asking.

## II.  Search Warrants

Issuance of a search warrant depends on probable cause.  *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).  Probable cause exists if there is a fair probability that evidence of a crime will be found at a specified location.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The test is whether a reasonable reading of the supporting affidavit provides a substantial basis for the magistrate's conclusion that probable cause existed.  *Id.* at 238-39; *Duarte*, 389 S.W.3d at 354.

A criminal defendant may challenge the truthfulness of factual statements made in a search warrant affidavit.  *Franks*, 438 U.S. at 171-72.  He bears the burden to show by a preponderance of the evidence a material misstatement that was made intentionally or knowingly or with reckless disregard for the truth.  *Id.* at 155-56.  A false statement is material if it "is necessary to the finding of probable cause[.]"  *Id.* at 156.  The Fifth Circuit has applied *Franks* to omissions of material facts.  *See U.S. v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).  We have assumed that *Franks* applies to material omissions, but we have not decided the issue.  *See Renteria v. State*, 206 S.W.3d 689, 704 (Tex.

Crim. App. 2006).

If part of the affidavit is excised, the reviewing court examines the remainder of the affidavit as a magistrate would, looking at the totality of the circumstances to determine the existence of probable cause. *Hyland v. State*, 574 S.W.3d 904, 911 (Tex. Crim. App. 2019); *State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015). We interpret it "in a commonsensical and realistic manner, drawing reasonable inferences from the information." *Le*, 463 S.W.3d at 877. We do not focus on what other facts could or should have been included in the warrant affidavit; the focus is on the combined logical force of facts that are in the affidavit. *Duarte*, 389 S.W.3d at 354-55 (citing *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007) ("The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit."). Information outside the four corners of the affidavit, such as testimony from the suppression hearing, should be considered only to determine if there was a material misrepresentation within the affidavit. *See Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003).

A search warrant based in part on tainted information is still valid if it could have been issued based on the untainted information in the affidavit. *Franks*, 438 U.S. at 171-72; *Hyland*, 574 S.W.3d at 912-13; *Le*, 463 S.W.3d at 877. But if the remainder does not support probable cause, then the search warrant must be voided and the evidence suppressed. *Franks*, 438 U.S. at 155-56.

## III.  Informants

There are different types of informants, and their credibility depends on what type they are.   A citizen informant reporting as a victim of or witness to a crime "is presumed to speak with the voice of honesty and accuracy."   *Duarte*, 389 S.W.3d at 356.   But "[t]he criminal snitch who is making a *quid pro quo* trade does not enjoy any such presumption; his motive is entirely self-serving."   *Id.*

A snitch, or a CI, may supply probable cause if he has a proven track record of providing reliable information.   *Id.* at 357.   In the absence of such a track record, the information given by either a CI or an anonymous informant may be reliable for other reasons, e.g., because it is corroborated, it is a statement against penal interest, it is consistent with other information, it is a detailed, first-hand account, or it is paired with an accurate prediction of the subject's future behavior.   *Id.* at 356-57.   Thus, confidential informants and anonymous informants are treated the same when evaluating the information they give in support of warrants:   their reliability depends on facts from which an inference may be drawn that they are credible or that their information is reliable.   *Id.* at 357.   Their credibility or reliability must be demonstrated within the four corners of the affidavit.   *Franks*, 438 U.S. at 165; *Duarte*, 389 S.W.3d at 357.

## IV.  The Affidavit

The affidavit in support of the warrant to search Appellant's phones was a little over two pages long.   The undisputed part of it relevant to this appeal can be summarized as follows:

- Houston Police Officer Troy Dupuy and his wife were home on the night of September 26 when their front door was kicked in by two men who were saying, "Police, police." One of them, later identified as Appellant, had sunglasses on his head and was pointing a pistol at Dupuy. Dupuy opened fire. Appellant dropped to the floor, returned fire, and shot Dupuy in the leg. Both intruders fled.

- A crime scene unit officer found, among other things, sunglasses, a cell phone battery, and a cell phone battery cover on the floor near the door. These things did not belong to Dupuy or his wife.

- Later forensic testing could not exclude Appellant as a source of the DNA found on the sunglasses found at the scene.

- Appellant was arrested four days after the home invasion in possession of three cell phones.

- Angstadt told the affiant that in his training, experience, and opinion, criminals often use cell phones to communicate about the crimes they commit and that messages, GPS data, browsing history, and other information relevant and material to the investigation were likely stored on the cell phones associated with Appellant.

The disputed part of the affidavit resided in a single paragraph. It is quoted

below, and the disputed parts are italicized and labeled A, B, and C:

On September 30, 2013, Dep. D. A. [A] *Angstadt received an anonymous tip that an individual known as 'Jessie' was involved in the home invasion against the Complainant. The tipster provided two phone numbers for the suspect.* [B] *Based on Dep. D.A. Angstadt's training and experience as a narcotic, robbery and homicide investigator, Dep. D. A. Angstadt knew persons who commit home invasions are commonly involved in the illegal narcotics trade.* [C] *Dep. D. A. Angstadt* spoke to DEA Special Agent Michael Layne and *requested SA Layne run the phone numbers through DEA data bases.* Dep. D. A. Angstadt learned that one of the phone numbers belonged to Defendant Nelson Garcia Diaz. Dep. D. A. Angstadt learned that Defendant had active warrants for Armed Robbery and Kidnapping from Georgia. Dep. D. A. Angstadt also learned that the Defendant was a convicted felon. Dep. D. A. Angstadt notified the Gulf

> Coast Violent Offender Task Force that Defendant was wanted and a suspect in the present case.

With respect to statement A, Appellant points out that the "anonymous tip" came from a CI.   As for statement B, he argues that it implied that Angstadt's training and experience prompted him to contact the DEA.   And regarding statement C, Appellant points out that the DEA initiated contact with Angstadt, not the other way around.

## V.   Court of Appeals

The court of appeals' majority determined that Appellant did not show a *Franks* violation.   *Diaz*, 604 S.W.3d at 603.   The misrepresentation of the CI as an anonymous source was not material, and the crucial information was true and corroborated by the DEA agents.   *Id.* at 602.   The dissent, however, argued that the mischaracterization of the CI as an anonymous tipster was material because CIs are not presumed to be inherently reliable, and the affidavit did not contain corroborating evidence or information about the confidential informant's credibility.   *Id.* at 607-08 (Spain, J., dissenting).   The dissent pointed out that later corroboration by the DEA agents could not cure the deficiencies in the affidavit because that corroboration was not included in the affidavit.   *Id.* at 608.

## VI.   Materiality

## Statement A:   Anonymous source vs. CI

Testimony by the DEA agents demonstrated that characterizing the CI as an anonymous source was incomplete because it omitted the fact that the source was also a

CI.   We will assume without deciding that such an omission may violate *Franks*.   The omission was not material, however, because an anonymous tipster is not treated less skeptically than a CI.   *See Gates*, 462 U.S. at 241-42, 244-46; *Duarte*, 389 S.W.3d at 355-57.   The credibility of CIs and anonymous sources and the reliability of the information they provide are evaluated the same way—according to facts in the affidavit demonstrating their credibility or the reliability of their information.   *Duarte*, 389 S.W.3d at 357.   Thus, referring to the source as anonymous and failing to label him a CI did not enhance his credibility, make his information more reliable, or lower the standard for evaluating probable cause.

The dissenting opinion below correctly critiqued the majority opinion for looking to evidence outside the four corners of the affidavit to support the source's credibility or the reliability of the information he provided.   *Diaz*, 604 S.W.3d at 607-08 (Spain, J., dissenting).   Such evidence must be found in the affidavit.   *Duarte*, 389 S.W.3d at 357. But the dissenting opinion overlooked corroborating evidence in the affidavit.   That is, the affidavit included the fact that Appellant could not be excluded as the source of DNA found on the sunglasses left at the scene by the shooter.   This corroboration substantiated the source's credibility and the reliability of his information and supported probable cause for the warrant's issuance.

**Statement B:   Implication that Angstadt's training and experience prompted him to contact DEA**

The full sentence at issue here reads as follows:   "Based on Dep. D.A. Angstadt's

training and experience as a narcotic, robbery and homicide investigator, Dep D. A. Angstadt knew persons who commit home invasions are commonly involved in the illegal narcotics trade." Appellant does not claim that this sentence is false, and no evidence shows it to be false. Rather, Appellant claims that Statement B was camouflage for statement C, below. Since Appellant did not prove this statement to be false, it cannot support his *Franks* claim. *See Franks*, 438 U.S. at 171 (holding that a *Franks* violation depends on evidence of falsity, and the burden rests on the defense to produce it).

**Statement C: Angstadt asked the DEA to check the phone numbers**

The DEA agents testified that they checked the phone numbers on their own initiative instead of on Angstadt's request. But this falsehood is immaterial because specifying who prompted the phone-number check was not necessary for the probable cause finding. *See Franks*, 438 U.S. at 156.

**VII. Conclusion**

Because the disputed statements in the affidavit were not material, and one was not proven false, Appellant has failed to show a *Franks* violation. Consequently, we affirm the court of appeals' judgment.

Delivered: October 27, 2021

Publish