

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0027-21

### THE STATE OF TEXAS

### v.

### JOHN WESLEY BALDWIN, Appellee

## ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

MCCLURE, J., delivered the opinion of the Court, in which HERVEY, RICHARDSON, NEWELL, AND WALKER, JJ., joined. KELLER, P.J., filed a dissenting opinion in which YEARY, KEEL, and SLAUGHTER, JJ., joined. YEARY, J., filed a dissenting opinion.

## O P I N I O N

During a capital murder investigation, investigators obtained a search warrant for Appellee John Wesley Baldwin's phone pursuant to Texas Code of Criminal Procedure article 18.0215(c)(5)(B). In a motion to suppress, Appellee objected to the search warrant's supporting affidavit, which contained generic statements about the use of cell phones. The

trial court and the court of appeals both concluded that the affidavit did not contain sufficient facts to establish a fair probability that a search of the cell phone found in Appellee's vehicle would likely produce evidence in the investigation of the murder. We granted review to answer this question: under what circumstances may boilerplate language about cell phones be considered in a probable cause analysis? We hold that boilerplate language may be used in an affidavit for the search of a cell phone, but to support probable cause, the language must be coupled with other facts and reasonable inferences that establish a nexus between the device and the offense. Because the affidavit in the instant case failed to do so, we discern no abuse of discretion on the part of the trial court and no error on the part of the court of appeals.

*Background*

On September 18, 2016, Adrianus Michael Kusuma was shot and killed during a robbery at his residence. The homeowner's brother, Sebastianus Kusuma, witnessed the murder and said the perpetrators were two black men who fled in a white, four-door sedan. Investigators learned that, shortly after the murder, one of the Kusuma's neighbors saw a white, four-door sedan exit the neighborhood at a very high rate of speed.

Investigators obtained security footage from a nearby residence showing a white sedan suspiciously circling the neighborhood, not only on the day of the capital murder, but on the day before as well. On four separate occasions, the sedan entered a cul-de-sac, drove to the front of the residence where the murder occurred, and then turned around.

One neighbor came forward and informed investigators that a white sedan had passed by his residence three times shortly before the murder. The neighbor added that the sedan was driven by a large black male.

Another neighbor came forward and said that she had seen a white, four-door sedan "casing" the neighborhood on the day before the offense. This neighbor said there were two occupants in the sedan, and both were black men. This neighbor took a picture of the sedan, capturing the license plate.

Investigators determined that the sedan in the photo was registered to Appellee's stepfather, who claimed he sold the sedan to Appellee. Appellee's stepfather told investigators that Appellee was living at his girlfriend's apartment.

Investigators located the sedan at the apartment and followed Appellee as he left in the sedan. A marked unit eventually pulled Baldwin over for unsafely crossing two lanes of traffic in a single maneuver and for driving over the "gore zone," which is the triangular portion of a highway exit. Baldwin was arrested for those traffic violations, as well as for driving with an expired license and for failing to show identification on demand.

Appellee made a lengthy statement to the police. He consented to a search of the sedan, and a cell phone was found inside. Appellee refused to consent to a search of the phone, so investigators obtained a search warrant. The following affidavit was submitted in support of the search warrant:

> On September 18, 2016, at 2120 hours, your Affiant was assigned to investigate the robbery and murder of Adrianus Michael Kusuma, an Asian male, date of birth September 27, 1982, having occurred at his home located at 21522 Canvasback Glen in unincorporated Harris County, Texas. Upon arrival at the scene, Affiant spoke with Sebastianus Kusuma, the brother of

the complainant, who was home at the time of the robbery and murder, a person Affiant found credible and reliable. Sebastianus Kusuma advised he was upstairs in his room when he heard a loud banging noise emanating from downstairs. Sebastianus Kusuma went downstairs to investigate and was confronted by a masked black male, armed with a handgun, at the base of the stairs. The masked gunman demanded money and began to assault Sebastianus Kusuma with his fists and the handgun in the dining room of the home. While he was fighting with this male, Sebastianus Kusuma stated he heard a gunshot coming from the kitchen area of the home and turned to see a second black male, also masked, running from the back of the house toward the dining room. The two gunmen grabbed a box of receipts and money from the Kusumas' family run business and fled the residence through the front door. Sebastianus Kusuma followed the two males from the home and witnessed them getting into a white, 4-door sedan and flee [sic] the scene. Sebastianus Kusuma returned to the home to search for his brother and found him lying on the kitchen floor near the back door. Adrianus Michael Kusuma had sustained a gunshot wound to the chest and was unconscious and unresponsive. The rear door of the residence was open and the door frame shattered from having been kicked in by the suspects.

The neighborhood where this murder occurred consists only of a circling boulevard with multiple small cul-de-sac streets that extend from the main boulevard. Vehicles may only access the neighborhood from one street that leads east off Gosling Road.

During the course of conducting the scene investigation, affiant learned that a neighbor, who lives near the entry street to the subdivision, was outdoors at approximately 8:45 PM when he observed a white, 4-door sedan exiting the neighborhood at a very high rate of speed. Within minutes of this vehicle exiting the neighborhood, this citizen observed emergency vehicles entering the neighborhood and thought the white vehicle may be connected to the response of emergency vehicles into the neighborhood.

Further, while conducting this investigation, Affiant was advised by Sergeant Mark Reynolds, a certified peace officer reputably employed by the Harris County Sheriffs Office and also assigned to the Homicide Division and assisting in this investigation, that he was approached by a citizen who advised a white, 4-door Lexus vehicle, bearing Texas license plate # GTK-6426, was observed driving through the neighborhood, and specifically, past the residence at 21522 Canvasback Glen, on multiple occasions on Saturday, September 17, 2016. The citizen found the repeated circling of the neighborhood and the complainant's home so suspicious that she photographed the vehicle on her smartphone and captured the license plate.

Based on the suspicious circumstances presented by this vehicle one day before the murder, this citizen feared the occupants, two black males, were possibly responsible for the robbery and murder.

Affiant and other investigators from the Homicide Division canvassed the neighborhood for residences that may have security cameras. Three (3) residences were located that had recording surveillance systems operating. Video from these surveillance systems were reviewed and one system captured video images of a white, 4-door vehicle, similar in appearance to the white Lexus registered under license plate GTK-6426, circling the neighborhood on Saturday, September 17, 2016 and Sunday, September 18, 2017 [sic]. Specifically, the video system located at 21622 Redcrested Glen captured images of the vehicle at 2:03 PM on Saturday, September 18, 2016, and the same vehicle on Sunday, September 19, 2016 at 8: 15 PM, 8:16 PM and 8:23 PM.[1] On each instance, the vehicle entered the cul-de-sac and drove to the circle in front of 21622 Redcrested Glen and turned around, leaving the view of the camera. On the 8:23 PM event, the vehicle paused momentarily before leaving the view of the camera. The residence at 21622 Redcrested Glen is only 5 residences to the north of the location where Sebastianus Kusuma observed the suspects in the robbery enter the white vehicle and flee the scene.

Affiant also interviewed a citizen at 21423 Mandarin Glen who advised that on Sunday, September 18, 2016, at a time estimated by him to be right at duck [sic], observed a white, Lexus GS300 vehicle, driven by a large black male lapped his residence three (3) times. Shortly after this vehicle passed by his residence the last time, the citizen stated he heard the sirens of emergency vehicles and came outside to see what was happening. The address of 21423 Mandarin Glen is approximately 2.5 blocks from the residence where the robbery and murder occurred.

On September 22, 2016, the vehicle bearing Texas license plate GTK-6426 was stopped by patrol deputies for traffic violations and was being operated by John Wesley Baldwin III, a black male, date of birth June 15, 1988. Baldwin gave consent to search the vehicle and a Samsung Galaxy5, within

---

[1] In her affidavit, Deputy Casey Parker mistakenly identified the dates as "Saturday, September 18, 2016," and "Sunday, September 19, 2016." But in two other sentences in the affidavit, she correctly identified September 17, 2016 as a Saturday and September 18, 2016 as a Sunday. Both the magistrate and the trial court properly concluded that the incorrect dates were typographical errors. And while Appellee does not complain about this typographical error, we note that purely technical or clerical discrepancies in dates or times do not automatically invalidate search or arrest warrants. *See Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990).

a red and black case was recovered. Baldwin stated that the phone carried the number 832-541-2500.

Based on your Affiant's training and experience, Affiant knows that phones and "smartphones" such as the one listed herein, are capable of receiving, sending, or storing electronic data and that evidence of their identity and others may be contained within those cellular "smart" phones. Affiant also knows it is possible to capture video and photos with cellular phones. Further, Affiant knows from training and experience that cellular telephones are commonly utilized to communicate in a variety of ways such as text messaging, calls, and e-mail or application programs such as google talk or snapchat. The cellular telephone device, by its very nature, is easily transportable and designed to be operable hundreds of miles from its normal area of operations, providing reliable and instant communications. Affiant believes that the incoming and outgoing telephone calls, incoming and outgoing text messaging, emails, video recordings and subsequent voicemail messages could contain evidence related to this aggravated assault investigation.

Additionally, based on your Affiant's training and experience, Affiant knows from other cases he [sic] has investigated and from training and experiences that it is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications. Further, Affiant knows from training and experiences that someone who commits the offense of aggravated assault or murder often makes phone calls and/or text messages immediately prior and after the crime.

Affiant further knows based on training and experience, often times, in a moment of panic and in an attempt to cover up an assault or murder that suspects utilize the internet via their cellular telephone to search for information. Additionally, based on your Affiant's training and experience, Affiant knows from other cases he has investigated and from training and experiences that searching a suspect's phone will allow law enforcement officers to learn the cellular telephone number and service provider for the device. Affiant knows that law enforcement officers can then obtain a subsequent search warrant from the cellular telephone provider to obtain any and all cell site data records, including any and all available geo-location information for the dates of an offense, which may show the approximate location of a suspect at or near the time of an offense.

Based on Affiant's training and experience, as well as the totality of the circumstances involved in this investigation, Affiant has reason to believe that additional evidence consistent with robbery and/or murder will be

located inside the cellular telephone, more particularly described as: a Samsung Galaxy5, within a red and black case, serial #unknown, IMEI #unknown. Affiant believes that call data, contact data, and text message data, may constitute evidence of the offense of robbery or murder. Affiant marked the phone with the unique identifier HC16-0149834 and it is currently located at 601 Lockwood, Houston, Harris County, Texas.

A magistrate issued the search warrant. A Harris County grand jury indicted Appellee for the murder of Adrianus Kusuma in the course of robbing him.

*Motion to Suppress*

Appellee filed a motion to suppress the statements he made to the police and the evidence found on his cell phone. The Honorable Judge Denise Collins of the 208th District Court held a hearing on the motion on December 18, 2018. She found that the traffic stop was pretextual but lawful and denied the motion to suppress Appellee's statements. Judge Collins then determined that the affidavit was insufficient to connect either Baldwin or his cell phone to the capital murder.[2] Judge Collins orally noted three particular omissions within the affidavit: (1) the affiant reported that one witness had identified the driver of the sedan as a "large black male," but the affiant merely described Baldwin as a "black male," without identifying his size; (2) the affiant did not explain how investigators had tracked down Baldwin to his girlfriend's apartment, even though that information was known to them; and (3) the affiant did not indicate that Baldwin was the actual owner of the sedan

---

[2] Judge Collins's oral finding:
> The probable cause directed at that phone, there is nothing in that warrant directing probable cause to Mr. Baldwin at all . . . .[T]here is nothing in the warrant to tie that vehicle to Mr. Baldwin other than he was stopped four days later driving it; and I don't find that is sufficient to create the probable cause that the phone that he had would contain evidence of a capital murder.

where the cell phone was found. Judge Collins granted Appellee's motion as to the cell phone evidence only; however, she did not put her ruling or findings in writing.

In a written order dated January 11, 2019, the Honorable Judge Greg Glass, the newly elected judge of the 208th District Court, granted Appellee's motion in its entirety (as to both the cell phone evidence and Appellee's statements) without holding a hearing or making written findings. The State appealed the order, raising two issues in its brief. First, the State argued that Judge Glass should not have suppressed the cell phone evidence because, when viewed in the light most favorable to the magistrate's decision, the affidavit supported a finding of probable cause. Second, the State argued that Judge Glass should not have suppressed Baldwin's statements because Judge Collins had previously found that the traffic stop was lawful, and that finding was supported by evidence developed at the hearing.

*The Interlocutory Appeal and Abatement*

Due to the conflicting rulings, the Fourteenth Court of Appeals abated the appeal and remanded the case to Judge Glass with instructions to conduct a hearing and clarify the scope of his order. The court of appeals explained that it could not address the sufficiency of the affidavit without first addressing the lawfulness of the traffic stop. If the traffic stop had been unlawful, then all the evidence would need to be suppressed under the exclusionary rule (unless an exception applied, which the State had not suggested). The lower court refused to infer from Judge Glass's ruling a finding as to the lawfulness of the traffic stop. On remand, Judge Glass held a brief hearing and explained that he had intended

to adopt his predecessor's rulings. He then signed an amended order granting Appellee's motion as to the cell phone evidence only.

Because the amended order mooted the State's argument that the traffic stop was lawful, the court of appeals only addressed the sufficiency of the search warrant affidavit. In a panel opinion, with Justice Bourliot dissenting, the court of appeals reversed Judge Glass's ruling and remanded the case to the trial court. *State v. Baldwin*, No. 14-19-00154-CR, 2020 WL 4530149, at *1 (Tex. App.—Houston [14th Dist.] Aug. 6, 2020, *withdrawn and superseded on reh'g,* 614 S.W.3d 411 (Tex. App.—Houston [14th Dist.] Dec. 10, 2020) (en banc).

Appellee filed a motion for rehearing and a motion for en banc reconsideration. The en banc court of appeals granted his motion for en banc reconsideration, withdrew its prior opinion, and affirmed Judge Glass's ruling granting Appellee's motion to suppress the evidence found on his cell phone. *State v. Baldwin*, 614 S.W.3d 411, 413 (Tex. App.—Houston [14th Dist.] 2020) (en banc) (op. on rehearing). Justice Zimmerer joined Part II of the majority opinion only and filed a concurring opinion. *Id.* at 419. Justice Christopher filed a dissenting opinion joined by Chief Justice Frost and Justices Wise and Jewell. *Id*. at 419, 422.

<u>*Court of Appeals Opinions*</u>

*En Banc Majority Opinion*

The court below determined that the affidavit did not contain sufficient and particularized facts to establish probable cause that a search of Appellee's cell phone was likely to produce evidence in the investigation of the murder. *Id*. at 415–16. Instead, the

affidavit establishes that the perpetrators left the murder scene in a white four-door sedan, two neighbors saw a white four-door sedan in the neighborhood the day before and the day of the murder, and security footage recorded a white sedan in the neighborhood the day before and the day of the murder. *Id*. at 416. However, "there are no facts from which to infer that the witnesses all saw the same sedan" or that the security footage recorded the same sedan the witnesses saw. *Id*. The only fact tying Appellee to the neighborhood is the photo of the license plate taken the day before the murder. *Id*. At most, according to the lower court, "the magistrate could infer that [Appellee] (or someone driving his car) was in the neighborhood the day before the murder." *Id*.

The court below relied on *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012), for the proposition that for the magistrate's implied finding to be reasonable, the warrant application must show a correlation between Appellee's car and the car used in the murder. *Baldwin*, 614 S.W. 3d at 416. Applying *Duarte*, the court below found there was no evidence that Appellee's car was the same car in the neighborhood on the day of the murder and used in the murder. *Id*. The court noted,

> it would strain credulity to conclude that in a county with nearly five million people that evidence of a crime probably would be found in a someone's car just because he was in the neighborhood the day before the offense in a car the same color as the one driven by a suspect who also happened to be Black.

*Id*. (citing *Amores v. State*, 816 S.W.2d 407, 412–16 (Tex. Crim. App. 1991)). Therefore, the warrant application showed no nexus between Appellee's car and the car at the scene of the murder. *Id*. at 417.

The lower court also distinguished between the instant case and *Ford v. State*, 444 S.W.3d 171, 193 (Tex. App.—San Antonio 2014), *aff'd*, 477 S.W.3d 321 (Tex. Crim. App. 2015). *Baldwin*, 614 S.W.3d at 416–17. In *Ford*, the car was specifically described as a Chevy Tahoe with a roof rack and horizontal stripes, and other facts tied the defendant to the incident. *Ford,* 444 S.W.3d at 180. In the instant case, according to the lower court, nothing distinctive tied Appellee's car to the one seen at the murder. *Baldwin*, 614 S.W.3d at 416–17.

The court below was also critical of the "generic recitations about the abstract use of cell phones" in the affidavit. *Id*. For example, the affiant stated that cell phones "are commonly utilized to communicate in a variety of ways such as text messaging, calls, and e-mail or application programs such as google talk or snapchat" and that "it is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications." *Id*. However, this generic language that "a smart phone may reveal information relevant to an offense and that suspects might communicate about their plans on a cell phone is not sufficient to establish probable cause to seize and search a cell phone." *Id*.; *see Martinez v. State*, No. 13-15-00441-CR, 2017 WL 1380530 at *3 (Tex. App.—Corpus Christi Feb. 2, 2017, no pet.) (mem. op, not designated for publication); *see also Duarte*, 389 S.W.3d at 360.

Ultimately, the intermediate court held that, "while magistrates may draw reasonable inferences from . . . the four corners of an affidavit, if too many inferences are drawn, 'the result is a tenuous rather than a substantial basis for the issuance of a warrant.'" *Baldwin,* 614 S.W.3d. at 418 (quoting *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim.

App. 2006)). In this case, the nexus between the car Appellee was driving and the car seen at the murder scene was "tenuous at best." *Id*. Extending that nexus to include Appellee's cell phone would be extending the reach of probable cause too far. *Id*.

*Concurring Opinion*

Justice Zimmerer filed a concurring opinion, disagreeing with the majority that there was no nexus between Appellee's car and the murder, while agreeing with the majority that the affidavit did not establish a nexus between criminal activity and the cell phone. *Id*. at 419. The concurring opinion noted that the cases cited by both the dissent and the State contained "more particular facts tying the cell phone to the alleged offense" than the affidavit in the case before us. *Id*. at 422. Specifically, Justice Zimmerer stated, "The affidavit in this case goes no further than broad statements that 'criminals often use cell phones' and 'criminals often make plans on cell phones.'" *Id*. Therefore, because the affidavit in this case provided no facts that a cell phone was used during the commission of the offense, the magistrate could not reasonably infer that evidence of the murder could be found on the cell phone. *Id*.

*Dissenting Opinion*

Justice Christopher, joined by Chief Justice Frost and Justices Wise and Jewell, dissented and criticized the majority for supplanting its judgment for that of the magistrate and imposing a rigid and unrealistic standard for probable cause. *Id*. Instead, the dissenters would hold the magistrate "implicitly found that there was probable cause to believe that a search of Appellee's cell phone would likely produce evidence in the investigation" of the

murder. *Id*. at 422–23. According to the dissent, the magistrate's finding is based on the facts, inferences, and a "common-sense reading of the affidavit." *Id*. at 424.

*Petition for Discretionary Review*

On petition for discretionary review, the State argues that the affidavit supported the magistrate's implied finding of probable cause because it contained sufficient facts showing that a search of Appellee's cell phone would probably produce evidence of preparation and the identity of the other participant in the murder. In addition, the State argues that particularized facts are not required. Instead, according to the State, nothing other than the affiant's assumption that "It is common for suspects to communicate about their plans via text messaging, phone calls, or through other communication applications" is necessary to connect the murder with Baldwin's phone.

We granted review of the following two issues:

(1) Did the court of appeals depart from the proper standard of review by substituting its own judgment for that of the magistrate who viewed the warrant affidavit and found probable cause?
(2) Did the court of appeals employ a heightened standard for probable cause, departing from the flexible standard required by law?

*Analysis*

While we agree that the court of appeals' analysis failed to give deference to the magistrate's implied findings with respect to the nexus between the sedan and murder, the court of appeals was correct in concluding that the boilerplate language was insufficient to establish a fair probability that evidence of the murder would be found on the cell phone.

    i.     *The court of appeals misapplied the law with respect to the nexus between Appellee's car and the car in the incident.*

Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location. *Duarte*, 389 S.W.3d at 354. This is a flexible, non-demanding standard. *Id*. The duty of reviewing courts is to ensure a magistrate had a substantial basis for concluding that probable cause existed. *Id*. Reviewing courts must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process. *Duarte*, 389 S.W.3d at 354. When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner. *Id*. (n. 25); *McLain*, 337 S.W.3d at 271–72.

In determining whether an affidavit provides probable cause to support a search warrant, an issuing court and a reviewing court are constrained to the four corners of the affidavit. *McLain*, 337 S.W.3d at 271–72. We must examine the supporting affidavit to see if it recited facts sufficient to support conclusions (1) that a specific offense was committed, (2) that the property or items to be searched for or seized constitute evidence of the offense or evidence that a particular person committed it, and (3) that the evidence sought is located at or within the thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c).

Appellee argues that the court of appeals properly applied the standard of review by holding (1) that the statements in the affidavit did not support reasonable inferences that

all the vehicles were the same and (2) that there was no nexus between the white sedan observed fleeing the murder and the vehicle Appellee was driving four days later. We disagree with both Appellee's and the majority's conclusion that there was no nexus between Baldwin's vehicle and the offense.

The State alleges that it was reasonable for the magistrate to infer that the Lexus that Appellee was driving four days after the offense was linked to the capital murder. We agree. The magistrate considered evidence from the homeowner's brother, neighbors, and security footage and made an implied finding that all three witnesses saw the same vehicle. The magistrate could have reasonably determined that—even in a county as populous as Harris County—the sedan observed by neighbors and captured by security footage was the same sedan witnessed by the complainant's brother. For one thing, while the complainant's brother did not describe the car he saw in detail, his description narrowed the class of cars by color and number of doors, and his description did not differ from the descriptions of the car observed by neighbors and captured by security footage.

Moreover, the brother's description fit the car that drove by the complainant's residence multiple times the day before the murder and that was captured on camera circling the neighborhood. On this point, we agree with the dissent's observation: the separate sightings were too similar and too coincidental to be unrelated. The majority ignores that part of the affidavit describing the neighborhood as having only a single point of ingress and egress and a single circling boulevard with multiple cul-de-sacs branching out from the main boulevard. The dissent continued that, because of this fact, the magistrate could reasonably infer:

1. Because thru traffic is not possible in this neighborhood, there is a reasonable probability that the vehicles seen most frequently there belong to the residents of the neighborhood, which would also tend to explain why two separate neighbors became suspicious of an unfamiliar sedan circling the area.

2. Because the neighbors' suspicions were raised on two consecutive days about sedans that were similar in appearance, there is a reasonable probability that the neighbors witnessed the same sedan, and that its driver was deliberately circling the neighborhood in preparation for the capital murder.

3. Because the sedan was positively linked to Baldwin through the license plate, there is a reasonable probability that Baldwin was the driver witnessed by the homeowner's brother and that Baldwin participated in the capital murder.

*Baldwin*, 614 S.W.3d at 424 (Christopher, J., dissenting). We agree that the court of appeals' analysis departed from the law in this instance because it didn't give enough deference to the magistrate's implied findings and applied an overly demanding standard for probable cause.

ii.  *The search warrant affidavit did not establish a nexus between criminal activity and the cell phone.*

Under Texas law, to search a person's cell phone after a lawful arrest, a peace officer must submit an application for a warrant to a magistrate. The application must "state the facts and circumstances that provide the applicant with probable cause to believe that (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." Tex. Code Crim. Proc. Ann. art. 18.0215(c)(5).

While there is no statutory definition of "probable cause," under the Fourth Amendment, an affidavit is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial

basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39, (1983). However, *Gates* noted that the conclusory allegations alone are insufficient to support a finding of probable cause and that "sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. at 239.

*Gates* then highlighted two cases that "illustrate the limits beyond which a magistrate may not venture in issuing a warrant." *Id*. In *Nathanson* v. *United States*, 290 U.S. 41, 44, 46 (1933), the Supreme Court held that the sworn statement of an affiant that "he has cause to suspect and does believe" that liquor illegally brought into the United States is located on certain premises was conclusory and failed to establish probable cause. The *Gates* Court observed, "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement." 462 U.S. at 239.

Once again in *Aguilar* v. *Texas*, 378 U.S. 108, 109 (1964), the Supreme Court held that an officer's statement that "[a]ffiants have received reliable information from a credible person and do believe" that heroin is stored in a home is insufficient to establish probable cause. The *Gates* Court continued, "[a]s in *Nathanson*, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Gates*, 462 U.S. at 239.

While these two examples did not use boilerplate language, it is clear that the jurisprudence of the Supreme Court has consistently cautioned against "bare bones" affidavits, instead requiring some sort of corroboration to the conclusory statement when a

magistrate makes a probable-cause determination. Indeed, in *Gates*, the Supreme Court held that, under the totality of the circumstances, an anonymous tip was coupled with other facts and reasonable inferences, and therefore the magistrate had a "substantial basis" that a search would uncover evidence of a crime. *Id*. at 246. While we have not previously weighed in on the use of generic language in the affidavit for a warrant to search a mobile phone, we have previously held that affidavits which contain "mere conclusory allegations" are insufficient to establish probable cause. *See Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Most notably, in *State v. Duarte*, we reiterated that warrants should not be issued on "bare conclusions alone." 389 S.W.3d at 354 (quoting *Gates*, 462 U.S. at 239).

As applied to cell phones and boilerplate language, the holding in *Duarte* has been interpreted by a few intermediate courts to stand for the proposition that the affidavit must contain particularized facts demonstrating a fair probability that evidence relating to the offense would be located in the mobile phone.

In *Diaz v. State*, investigators recovered the back cover of a cell phone and a cell phone battery in a house following a burglary. 604 S.W.3d 595, 598 (Tex. App.—Houston [14th Dist.] 2020), *aff'd,* 632 S.W.3d 889 (Tex. Crim. App. Oct. 27, 2021). Three cell phones found on Diaz were searched pursuant to a warrant. *Id*. at 599. Diaz filed a motion to suppress, arguing that the probable-cause affidavit failed to establish a nexus between the cell phones and the burglary. *Id*. His motion was denied. *Id*. Because the probable-cause affidavit stated that police recovered cell phone parts from the crime scene, the Fourteenth Court of Appeals found that that the magistrate could have reasonably inferred the

perpetrators possessed or used cell phones before or during the burglary and that the recovered cell phones could have evidence of the burglary. *Id*. at 604. The court of appeals expressly stated that it wasn't relying on statements in the probable-cause affidavit that criminals generally use cell phones in crimes. *Id.* The lower court's analysis merits quoting at length:

> Here, appellant argues that nothing, "other than the officer's generalized assumptions" that criminals utilize cellular telephones to communicate and share information regarding crimes they commit, connected the specified offense with the phones to be searched. We disagree because, excluding any reliance on Sergeant Angstadt's assertion that generally criminals use cellular telephones and other electronic devices to facilitate criminal activity, other facts in the affidavit establish a sufficient nexus between the cell phones and the alleged offense.
>
> The affidavit stated that two men were involved in the home invasion and that police recovered several parts of one or more cell phones at the scene. From this, the magistrate reasonably could infer that the perpetrators possessed or utilized one or more cell phones before or during the planning or commission of the offense and that any recovered cell phones could have evidence of the offense. For instance, the magistrate reasonably could infer that the intruders' scheme of pretending to be police officers necessitated planning, which could have been orchestrated by telephonic communication.
>
> The affidavit also stated that DNA testing could not exclude appellant as a source of DNA on the sunglasses left at the scene, thus directly tying appellant to the crime scene. From this, the magistrate reasonably could infer that appellant was the owner of both the sunglasses and the cell phone or phones from which pieces detached during the offense and were left at the scene. Further, the affidavit provided that appellant was associated with at least two phone numbers and that police recovered a total of five cell phones in appellant's immediate possession or control upon his arrest. The magistrate reasonably could infer that appellant utilized these phones interchangeably and that evidence of criminal activity on one phone could have been transferred to another.

*Diaz*, 604 S.W. at 603–04.

Likewise, in *Walker v. State*, the Fourteenth Court of Appeals once again found that there was a fair probability that evidence relating to the commission of an offense, capital murder, would be found on the appellant's cell phone. 494 S.W.3d 905, 909 (Tex. App.— Houston [14th Dist.] 2016, pet ref'd). In *Walker*, investigators determined that the homicide complainant's cell phone was missing from his belt clip. *Id*. at 907. Police determined the car seen leaving the scene was the complainant's car. *Id*. The next day, when police located the complainant's car and initiated a traffic stop, Walker was driving the car with complainant's cell phone in his hand. *Id*. Walker admitted to being involved in the shooting. *Id*. The Fourteenth Court of Appeals found that a substantial basis for probable cause rested in the particularized facts connecting Walker to the cell phone. *Id*. at 909. In particular, the court cited allegations that Walker and the complainant had been communicating via Walker's cell phone planning robberies around the time that the complainant was killed and the fact that the complainant's stolen property was later found in Walker's possession. *Id*.

Although only a handful of cases address this specific issue[3], the courts below seem comfortable with the use of boilerplate language in affidavits for warrants to search mobile

---

[3] The Thirteenth Court of Appeals has also addressed this issue, albeit in an unpublished opinion, holding that a magistrate had a substantial basis for finding that probable cause existed to search a cell phone based on facts that the defendant communicated with his cohorts via cell phone. *Martinez v. State*, No. 13-15-00441-CR, 2017 WL 1380530, at *3 (Tex. App.—Corpus Christi Feb. 2, 2017, no pet.) (mem. op., not designated for publication). In *Martinez*, investigators pulled over a vehicle bearing the same license plate that the complainants in a suspected armed robbery had recorded. *Id*. at *2. Operating the vehicle was Eduardo Sanchez, who was accompanied by his girlfriend, Flor Garcia. *Id*. A subsequent search of Flor's apartment yielded evidence including, among other things, a red, white, blue and gray striped shirt (which the victim identified as the same shirt worn by the robber) and a gold necklace (which the victim identified as his own). *Id*. Flor told investigators that Martinez was one of the two subjects who committed the robbery, and she confirmed Martinez's identity by his phone number. *Id*. at *2–3. Sanchez confirmed that Martinez participated in the robbery with him. *Id*. at *3.

phones, so long as the generic language is coupled with "other facts." Certainly, this holding seems consistent with article 18.0215(c)(5) of the Texas Code of Criminal Procedure, which requires an affidavit offered in support of a warrant to search the contents of a cell phone to "state the facts and circumstances that provide the applicant with probable cause to believe . . . searching the telephone or device is likely to produce evidence in the investigation of . . . criminal activity."

Which brings us to the issue we seek to resolve in this case: Is generic, boilerplate language about cell phone use among criminals sufficient to establish probable cause to search a cell phone? We hold it is not. Instead, specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause. To hold otherwise would condone the search of a phone merely because a person is suspected to have committed a crime with another person. Put another way, all parties suspected of participating in an offense would be subject to having their cell phones searched, not because they used their phones to commit the crime, but merely because they owned cell phones.

In the instant case, the parties and the justices of the court of appeals disagree as to whether there were sufficient "other facts" present. The majority found that the only "other fact" in this case is that two black men committed the offense together and that this was

---

When arrested, Martinez had a cell phone on his person. *Id*. The probable-cause affidavit used to support the search of the cell phone included the above facts and concluded with boilerplate language that because cell phones are prevalent today, evidence tying Martinez to the robbery might be found on his cell phone. *Id*. After concluding that the trial court properly denied Martinez's motion to suppress, the Thirteenth Court of Appeals noted in *dicta* that such boilerplate language in an affidavit by itself doesn't establish sufficient probable cause to search a cell phone. *Id*.

insufficient to connect the mobile phone to the offense. For the dissent, that fact was sufficient to establish that the men might have used their cell phones to coordinate. The majority thinks the dissent's conclusion goes too far. We agree with the majority. While we defer to all reasonable inferences that the magistrate could have made, there are simply no facts within the four corners of the affidavit that tie Appellee's cell phone to the offense. The affidavit before us indicates nothing more than that neighbors saw a certain white sedan with a black driver circling their neighborhood the day before the offense occurred, a similar sedan was seen quickly leaving the neighborhood after the offense, and that Appellee, a black man, was driving the very same vehicle four days after the offense, and that this coincidence somehow necessarily connects Appellee's phone to the offense. That witnesses affirm the description and license plate number of the white sedan, as well as its registration to Appellee's father, are facts that support the nexus of the vehicle to the offense, they have no bearing on whether Appellee's phone is connected with the offense. The affidavit contains nothing about the phone being used before or during the offense. Suspicion and conjecture do not constitute probable cause, and "the facts as recited in the affidavit in this cause evidence nothing more than mere suspicion." *Tolentino v. State*, 638 S.W.2d 499, 502 (Tex. Crim. App. 1982). Therefore, the magistrate erred by substituting the evidentiary nexus for the officer's training and experience and generalized belief that suspects plan crimes using their phones. The boilerplate language in itself is not sufficient to provide probable cause in this case, nor does the remaining affidavit set forth details in sufficient facts to support probable cause. Considering the whole of the affidavit,

there is no information included that suggest anything beyond mere speculation that Appellee's cell phone was used before, during, or after the crime.

Presiding Judge Keller's dissent here adopts much of the reasoning of the dissent in the court below. Specifically, this dissent finds that a crime such as the one alleged here, "committed by two people, acting together over the course of two days," requires coordination. Keller, P.J., Dissenting Op. at 3. Therefore, "cell phone use would be expected," justifying the search of a phone, even if there are no facts showing that a phone was used in the planning or execution of the crime. *Id.* at 3. This dissent's reasoning would allow for the issuance of a warrant for a cell phone, without evidence that the phone was used to plan or execute the crime, as long as the offense required coordination and communication. *Id.* at 3–4. It appears the only limiting principle to this urged holding "could be crimes that would be less likely to involve the use of a cell phone and might not support probable cause to search," such as evading arrest. *Id.* at 3. This seemingly bright-line distinction between crimes that require planning versus spontaneous crimes is contrary to the Fourth Amendment and the jurisprudence of our State, which require more than "bare conclusions" or speculation for a search warrant. *See Rodriguez*, 232 S.W.3d at 61; *Duarte,* 389 S.W.3d at 354 (quoting *Gates*, 462 U.S. at 239).

In the present case, there is no evidence that the suspects planned the offense over multiple days other than the fact that Baldwin's white sedan was seen in the neighborhood the day before the offense. There is no evidence that these particular suspects communicated about the crime by cell phone, as there was in *Walker,* 494 S.W.3d at 909.

All that is present here is that two black men committed an offense together, which is clearly insufficient to establish a connection between cell phone usage and the offense.

*Conclusion*

The record, while viewed in the light most favorable to the magistrate's ruling, supports the trial court's conclusion that the affidavit contained insufficient particularized facts to allow the magistrate to determine probable cause for a warrant to search the phone. Insofar as the court of appeals affirmed the trial court's order granting the motion to suppress evidence obtained from the cell phone found in Baldwin's vehicle, we affirm.

Delivered: May 11, 2022

PUBLISH