**Affirmed and Memorandum Opinion filed April 11, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00602-CR

---

### ANDRE TIMOTHY JACKSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1635620**

---

### MEMORANDUM OPINION

A jury found appellant Andre Timothy Jackson guilty of murder. Tex. Penal Code Ann. § 19.02. The trial court, at appellant's election, assessed punishment of life imprisonment. Tex. Penal Code Ann. § 12.31(b).[1] In four issues, appellant

---

[1] Although the reporter's record reflects that the trial court stated the jury found appellant guilty and assessed punishment, it is silent regarding pronouncement of sentence in open court. Neither the State or appellant addressed this at trial or on appeal. The space on the OCA standard judgment form for "Date Sentence Imposed" states "5/4/2022," and the court's docket states, "AT 5:20PM THE JUDGE SENTENCED THE DEFENDANT TO LIFE IN PRISON STARTING 05/04/2022."

argues: (1) the evidence was legally insufficient to support his conviction; and the trial court erred by denying his (2) motion to suppress; (3) request to strike the testimony of the State's DNA expert; and (4) requested jury instructions.

## I. BACKGROUND

In 2016, eleven-year-old complainant, Josue Flores, was attacked while he walked home from school in north Houston and stabbed 18 times. Complainant died of his injuries. The attack happened in the middle of day in a neighborhood full of people with no apparent motive.

Several witnesses saw the attack and several more saw the attacker flee the scene of the attack. However, the witnesses' descriptions of the attacker differed significantly. Initially, a suspect was arrested based on a photographic-array identification. However, the charges against that individual were dropped after his alibi was confirmed. The Houston Police Department (HPD) then gathered security footage from area homes and businesses. Although there is no video footage of the attack or any person following complainant before the attack, the police were able to identify a suspect who was first seen in videos just two blocks north of where the attack occurred. HPD publicized a photograph of the suspect, which led the police to appellant.

Appellant was living in a shared room at a Salvation Army center. HPD secured a warrant for appellant's arrest and arrested him at the Salvation Army residence. HPD then sought and received a search warrant for his room.

DNA testing of appellant's jacket was inconclusive; and the clothing worn by appellant offered no evidence of appellant's commission of murder. In 2017, the State dropped its charges against appellant.

In 2019, complainant's murder was considered a cold case. HPD's cold case

2

division decided to retest the DNA from appellant's jacket and sent the DNA sample to an out-of-state laboratory with newer and more sensitive DNA technology. As a result of that testing, complainant's DNA was found in the sample taken from the jacket. The sample was not from blood, but what is known as "touch" DNA, a small amount of skin cells left after contact. The State filed new charges and appellant was tried and convicted in 2022.

## II.    ANALYSIS

### A.    Sufficiency of the evidence

In issue one, appellant challenges the sufficiency of the evidence supporting his conviction. A person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02. Here, appellant argues the evidence was not legally sufficient to establish beyond a reasonable doubt that he was the person who murdered complainant.

#### 1.    Standard of review

The Due Process Clause of the Fourteenth Amendment requires that a conviction be supported by legally-sufficient evidence. *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018); *see also Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); U.S. CONST. XIV, § 1. In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see also Brooks v.*

3

*State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We measure the evidence by the elements of the offense as defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

We may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the jury. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's resolution of any conflicting inferences from the evidence and presume that it resolved such conflicts in favor of the judgment. *Jackson*, 443 U.S. at 326; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

### 2.    "Touch" DNA

Appellant argues that the only evidence connecting him to the crime is the fact that both the individual who killed complainant and appellant were wearing a green jacket and that "touch" DNA evidence from complainant was found on appellant's jacket. Citing problems with "touch" DNA, appellant argues that the evidence adduced at trial was legally insufficient to support his conviction.

None of the eyewitnesses identified appellant as the attacker. Although, the State does cite to testimony from two witnesses who saw the attack on complainant and testified that a Black man with a green jacket ran away. The State further cites another two witnesses who lived nearby and described seeing a Black man with a green jacket jog or run by their house on his path away from the scene. The testimony of these witnesses from the neighborhood provides evidence of the path taken by the attacker after he stabbed complainant. This evidence connects the video footage of appellant two blocks from the murder geographically and in time to the murder of complainant.

There is no question—as appellant argues—that the "touch" DNA evidence

4

was critical to his conviction. "Touch DNA is based on Locard's Principle that when a person touches something the person's epithelial, or skin, cells transfer to that object and then may be subjected to DNA analysis." *Reed v. State*, 541 S.W.3d 759, 765 (Tex. Crim. App. 2017). "One of the limitations of touch DNA analysis is that it cannot determine 'when an epithelial cell was deposited.'" *Id*. at 777. It has also been recognized that epithelial cells can be deposited by someone other than the person whose DNA was found: "Just as a person may deposit his own epithelial cells, he may deposit another's if those cells were exchanged to him by touching an item another has touched." *Id*. Therefore, the analysis itself cannot determine who left the DNA or when the DNA was deposited. *Id*.

Although the court of criminal appeals has acknowledged the limitations or "special problems" of "touch" DNA on several occasions, the court has never suggested that "touch" DNA has no probative value or is worthless, as appellant suggests on appeal. *See Hall v. State*, 569 S.W.3d 646, 658 (Tex. Crim. App. 2019) (discussing limitations of "touch" DNA). Rather, the court has explained that "the significant possibility of [touch] DNA being deposited by an innocent person reduces the probative value of any exculpatory DNA test result." *Id.*

It is worth noting that *Hall*, *Reed,* and the most recent discussion of "touch" DNA in *Dunning* were in the context of applying the standard for granting or denying DNA testing in a post-conviction proceeding, in which to warrant testing an applicant must "show that an exculpatory result on such a test would make a difference in Appellant's case." *See Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019); *Hall v. State*, 569 S.W.3d at 649; *Reed*, 541 S.W.3d at 777. In the present case, by contrast, we are required to determine whether the evidence is sufficient to support the conviction. When examining the legal sufficiency of the evidence, we "must not engage in a 'divide and conquer' strategy but must

consider the cumulative force of all the evidence." *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (citing *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)).

### 3. The cumulative evidence is legally sufficient

Because appellant and complainant did not know each other and there was no evidence they were ever acquainted, appellant's theory was that (1) complainant's killer brushed past appellant and deposited complainant's DNA on his jacket or (2) complainant's DNA was deposited onto the jacket through contamination in the laboratory. However, these theories were based on speculation rather than any direct evidence at trial.

As the sole judge of the weight and credibility of the evidence, the jury was free to accept some, all, or none of a witness's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). The jury heard the testimony from Rachel Oefelein, who was involved in the 2019 DNA analysis of appellant's jacket; the forensic analysist who tested appellant's jacket in 2016 at the Department of Public Safety's Regional Crime Laboratory; as well as appellant's DNA expert.

Appellant's DNA expert testified about the limitations of "touch" DNA including the fact that trace amounts of DNA from skin cells do not offer any information about *when* the DNA was deposited. Appellant's expert also explained that one person's skin cells can be transferred and deposited by another individual. Appellant's expert further discussed the possibilities for contamination. The jury also heard testimony from an analyst at the DPS's Regional Crime Laboratory who testified as to the processes and safeguards the laboratory had in place to prevent cross-contamination. Therefore, the jury was able to resolve any conflicts in the evidence and reach their own determination about the weight to give the "touch"

DNA. Given the lack of connection between appellant and complainant, a rational trier of fact could have concluded that the only plausible explanation for complainant's DNA on appellant's jacket was the result of his attack on complainant. In so finding, the jury would have determined that the possibility of laboratory contamination did not rise to the level of a reasonable doubt.

There was also no question that appellant was in vicinity at the time of complainant's attack and was seen in surveillance videos just two blocks from the attack within minutes of the attack. However, appellant argues that the surveillance videos in which he appears do not show any blood on his clothes or skin. The jury saw the surveillance videos. Although appellant does not appear with any obvious blood stains on his clothing, none of the videos are of such high resolution that the jury could rule out the presence of any blood. Further, the medical examiner testified that in complainant's autopsy he found a large volume of blood inside complainant's chest cavity, consistent with an injury to his lung that would have created a vacuum and kept a large volume of complainant's blood inside his body. Combined with the angle of attack, the jury heard evidence supporting a conclusion that appellant did not get much, if any blood, on his clothing. One witness to the attack described the attacker as very "clean" and no witnesses described seeing visible blood on the attacker's clothes.

We defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 326. Reviewing all the evidence in the light most favorable to the verdict, we conclude the jury could have rationally found beyond a reasonable doubt that appellant was guilty of murder.

We overrule appellant's issue one.

7

**B.      Motion to suppress**

In issue two, appellant argues the trial court abused its discretion in overruling his motion to suppress. Appellant argued that the search warrant—used to seize the jacket containing the DNA evidence—violated his Fourth Amendment rights because it was conclusory in nature and did not contain enough information to establish probable cause. U.S. CONST. amend. IV.  Specifically, appellant argues the warrant did not establish why relevant evidence might be obtained in the Salvation Army room. In response, the State argues that they did not need a search warrant for the jacket because it was in plain view. Further, the State argues that the trial court's finding of probable cause is supported by the affidavit and reasonable inferences drawn from it.

The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." *Id*. Similarly, the Texas Constitution provides: "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation. Tex. Const. art. I, § 9 (Tex. Official).

At the core of the Fourth Amendment, and its Texas equivalent, is the fundamental principle "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *Foreman v. State*, 613 S.W.3d 160, 164 (Tex. Crim. App. 2020) (although Texas constitution contains no requirement that search or seizure be authorized by

8

warrant, inquiry is whether under totality of circumstances and in light of "public and private interests that are at stake," search or seizure was "reasonable" which inquiry generally mirrors Fourth-amendment analysis). Based on this constitutional threshold, the Code of Criminal Procedure requires that a "sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." Tex. Code Crim. Proc. Ann. art. 18.01(b). And no evidence obtained in violation of a constitutional provision or law "shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a).

Probable cause for a search warrant exists when, under the totality of the circumstances presented in a peace officer's affidavit, there is a "fair probability" or "substantial chance" that contraband or evidence of a crime will be found at the specified location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). "It is established law . . . that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). However, the magistrate "may draw inferences from the facts." *Id.*

The probable cause affidavit at issue provides photographs and a description of room 211 at the Salvation Army in which appellant was staying at the time of his arrest. The affidavit contains a very long recitation of facts describing the police investigation and how appellant came to be a suspect in the investigation. At the conclusion of the affidavit, the affiant states that an arrest warrant was executed and appellant "was located in Room #211, as described above, of the Salvation Army." The affidavit does not explain how appellant came to be found in room 211, nor does it state that room 211 was his residence. The affidavit also does not

9

identify what type of evidence was sought in room 211 other than the broad description of "evidence of the offense of Murder and/or evidence tending to show that a particular person committed the offense of Murder."

During the motion to suppress proceedings, the trial court denied appellant's motion to suppress and repeatedly stated that it had determined the search warrant was supported by probable cause. To the extent that appellant cites comments made by the trial judge stating that she would not have signed the warrant personally, those comments are not relevant to the inquiry here. The magistrate who signed the search warrant could have reasonably drawn an inference from the description and photographs of room 211, showing a bed and personal effects, combined with the information that appellant was located in that room at the time of arrest to conclude that appellant was living in and/or storing personal effects in room 211 sufficient to establish probable cause.[2] On the facts of this case, the trial court did not abuse its discretion in denying appellant's motion to suppress.

Having concluded that the search warrant was supported by probable cause, we need not consider the State's claim that the jacket was in plain view. We overrule issue two.

## C.    Motion to strike the State's DNA expert

In issue three, appellant argues the trial court abused its discretion when it denied appellant's request to strike the testimony of Rachel Oefelein, who testified on behalf of DNA Labs International, the out-of-state laboratory which tested the DNA from appellant's jacket in 2019.

---

[2] Although the magistrate did reasonably conclude the facts in the search-warrant affidavit were sufficient to establish probable cause given the photographs and descriptions in the record, the search-affidavit is only minimally compliant with the protections required by the law. Our conclusion in this case can not be expanded to establish that relying on inferences from photographs or descriptions will always be sufficient to establish probable cause.

In support of this argument, appellant asserts that Oefelein did not properly establish that DNA Labs International was accredited in Texas by the Texas Forensic Science Commission. Pursuant to Code of Criminal Procedure article 38.35, a forensic analysis and any expert testimony relating to the analysis are not admissible if the laboratory conducting the analysis was not accredited pursuant to the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.35(d)(1). Although Oefelein testified that DNA Labs International was accredited nationally and that Texas recognized that accreditation, appellant relies on the fact that the State did not establish the appropriate predicate for admission of forensic evidence in Texas.

It is a well-established principle that to preserve an issue for appellate review, a party must make a timely objection at trial. Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a). Timeliness is an important aspect of proper preservation, and objections, including motions to strike, must be made as soon as the ground for it "becomes manifest." *Rhoades v. State*, 934 S.W.2d 113, 127 (Tex. Crim. App. 1996) (en banc); *see Heidelberg v. State*, 36 S.W.3d 668, 672 (Tex. App.— Houston [14 Dist.] 2001, no pet.) (explaining that if it is not possible to object before evidence is admitted, objection must be lodged as soon as objectionable nature of evidence becomes apparent and, if sustained, a motion to strike evidence must be urged); *see also* Tex. R. App. P. 33.1. Objections or motions made after the objectionable question has been asked and answered and the witness passed will not preserve error. *See Lagrone v. State*, 942 S.W.2d 602, 617–18 (Tex. Crim. App. 1997) (en banc).

Here, appellant's challenge to Oefelin's testimony is one of admissibility. Article 38.35(d) addresses the admissibility of a forensic analysis. Tex. Code Crim. Proc. Ann. art. 38.35(d)(1). But the admissibility issue was not raised either before

or during Oefelein's testimony. Instead, appellant waited until the day after Oefelein had been excused—long after the testimony had been admitted into evidence—to request that her testimony be struck. Appellant offers no explanation of how he preserved error or why his admissibility objection would not be subject to the rules of error preservation. Because appellant did not timely make his objection to the admissibility of Oefelein's testimony, we conclude this issue has not been preserved for appellate review.

We overrule issue three.

## D.    Jury-charge error

In issue four, appellant argues the trial court erred by denying two of his requested jury instructions. Both instructions related to the accreditation of DNA Labs International. One of the requested instructions would have instructed the jury to disregard Oefelein's testimony if it believed that DNA Labs International was not properly accredited in Texas. When the trial court denied this requested instruction, appellant sought an instruction that criminal laboratories must be accredited to conduct a forensic analysis. The trial court denied this instruction as well.

Appellant argues there was a fact issue over the status of DNA Labs International that the jury needed to resolve because the law requiring accreditation was violated. The Code of Criminal Procedure provides that "where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." Tex. Code Crim. Proc. Ann. art. 38.23(a). Here, appellant has not shown there was a fact question raised as to the accreditation of the laboratory. At trial, the State questioned Oefelein about accreditation as follows:

12

Q. And is DNA Labs International an accredited laboratory?

A. Yes.

Q. And what is the accrediting body?

A. ANAB.

Q. What does that stand for?

A. It stands for ANSI National Accreditation Board.

Q. And is that accreditation board recognized all across the country?

A. It is.

Q. Even here in Texas?

A. Yes.

As discussed above, Code of Criminal Procedure article 38.35 requires that to be admissible, a forensic analysis and any expert testimony relating to the analysis must have been conducted in an accredited laboratory. Tex. Crim. App. Proc. Ann. art. 38.35(d)(1). Here, the State did not specifically ask if DNA Labs International was accredited with the Texas Forensic Science Commission. But there was no testimony or questioning that raised any concern about the accreditation of DNA Labs International with the Texas Forensic Science Commission. The testimony and questioning before the jury established that DNA Labs International enjoyed nationwide accreditation and that its accreditation was recognized in Texas.

Because a jury charge instruction is only appropriate if there is a fact issue or question that is raised by the evidence, the trial court did not err in refusing to include appellant's requested instructions into the jury charge. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a).

We overrule issue four.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/      Charles A. Spain
         Justice

Panel consists of Justices Jewell, Spain, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).