

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0669-23

### AARON RAYSHAN WELLS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

**NEWELL, J., filed a concurring and dissenting opinion in which RICHARDSON and WALKER, J.J., joined.**

The most important question before us is whether the geofence warrant amounts to a constitutionally protected search. Instead of answering that question, Judge Yeary's opinion assumes it away and in doing so crafts an opinion that ensures that we will never have to answer the question. It turns this case from a geofence warrant case into a

probable cause case that will essentially lower the standard for probable cause for all warrants just to uphold a search pursuant to a novel type of warrant.

I disagree that the geofence warrant in this case was adequately supported by probable cause.  I would hold instead that Appellant did not have a legitimate expectation of privacy in the limited information sought through the geofence warrant's first and second steps.  These two steps sought temporally and spatially limited location history data consistent with existing case law regarding cell phone location information.

But I would hold that Appellant did have a reasonable expectation of privacy in the information sought by the warrant's third step, which included six months of prior IP history.[1]  Therefore, I concur with upholding at least the first two steps authorized by the geofence warrant but not on the basis of probable cause.  But because the court of appeals did not address the required threshold question of whether Appellant had a reasonable expectation privacy in the information sought by the geofence warrant I dissent to refusal to do so on that point.

---

[1] The warrant ordered that, "[f]or those accounts identified as relevant to the ongoing investigation through an analysis of provided records, and upon demand, the provider shall provide the subscriber's information for those relevant accounts to include, subscriber's name, emails addresses, services subscribed to, last 6 months of IP history, SMS account number, and registration IP."

**Was There a Constitutionally Protected Search?**

The Fourth Amendment's "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials."[2] "[W]hen an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' official intrusion into that sphere generally qualifies as a search and requires a warrant supported by probable cause."[3] We have recognized that "[t]he threshold issue in every Fourth Amendment analysis is whether a particular government action constitutes a 'search' or a 'seizure.'"[4] The State argued at trial, on appeal, and argues before this Court that Appellant has failed to establish a search occurred because he does not have a reasonable expectation of privacy in his location history data. Before reaching the question of probable cause, the court of appeals should have answered this threshold question.[5]

---

[2] *Carpenter v. United States*, 585 U.S. 296, 303 (2018).

[3] *Id.* at 296 (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

[4] *Sims v. State*, 569 S.W.3d 634, 643 (Tex. Crim. App. 2019) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)); *King v. State*, 670 S.W.3d 653, 656 (Tex. Crim. App. 2023) ("Absent a legitimate expectation of privacy, a defendant lacks standing to raise [a challenge the constitutionality of a search] and we may not consider the substance of his complaint.").

[5] *Wells v. State*, 675 S.W.3d 814, 827 (Tex. App. – Dallas 2023, pet. granted) ("Because we conclude that the warrant at issue satisfies the requirements of the Fourth Amendment and,

A common thread in the jurisprudence regarding the expectation of privacy is that voluntarily sharing things with others generally defeats an objective expectation of privacy. For example, in *United States v. Knotts*, the Supreme Court considered law enforcement's use of a planted beeper's signal to track a vehicle through traffic and recognized that movement in an otherwise public area is not protected by an expectation of privacy.[6] Similarly, when it comes to bank records, the turning over of financial information to a third party has been seen as a voluntary relinquishment of an expectation of privacy in the bank records themselves.[7] But the Court has also recognized that temporal limits should nevertheless be placed upon otherwise voluntarily disclosed information. For example, tracking information for an

---

alternatively, Detective Leob's reliance on the warrant was objectively reasonably, it is unnecessary for us to address the State's argument that appellant had no reasonable expectation of privacy in his location history."); *but see King*, 670 S.W.3d at 656.

[6] *United States v. Knotts*, 460 U.S. 276, 281-82 (1983) ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another"). But in *United States v. Jones*, the Court held that the government's use of a GPS tracking device it installed on the vehicle to monitor a vehicle's movements constituted a search under the Fourth Amendment deciding the case on the basis of the government's physical intrusion into the vehicle. *United States v. Jones*, 565 U.S. 400, 404-05 (2012). The Court acknowledged that "[i]t may be that achieving the same result [as traditional surveillance for a four-week period] through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy, but the present question does not require us to answer that question." *Id.* at 412.

[7] *United States v. Miller*, 425 U.S. 435, 437 (1976).

extended period of time even in a public place might infringe upon an expectation of privacy.[8]

From these cases it appears that seizing arguably voluntarily disclosed location information does not infringe upon an expectation of privacy if the information sought is both spatially and temporally limited. In *Carpenter*, the Court held there was a reasonable expectation of privacy in at least seven days of historical cell-site location information ("CSLI") associated with Carpenter's phone and, as a result, the Fourth Amendment was violated when the phone was searched without a warrant supported by probable cause.[9] The Court reasoned that cell-site location records hold "the privacies of life" by revealing "not only particular movements, but through them [a person's] 'familiar, political, professional, religious, and sexual associations.'"[10] The Court held that

---

[8] *Jones*, 565 U.S. at 426 (Alito, J., concurring in judgment) ("the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy"); *Carpenter*, 585 U.S. at 310 n. 3 (holding that accessing seven days of CSLI constitutes a Fourth Amendment search); *see also Sims*, 569 S.W.3d at 645-46 (whether government action constitutes a 'search' turns on whether 'enough' information was seized that it violated a legitimate expectation of privacy); *Ford v. State*, 477 S.W.3d 321, 335 (Tex. Crim. App. 2015) (holding no expectation of privacy in four days of location data and recognizing that the aggregation of data might be covered by a reasonable expectation of privacy even if a discrete bit of data would not be).

[9] *Carpenter*, 585 U.S. at 316. The two orders at issue in *Carpenter* sought 152 days of cell-site records, which produced records spanning 127 days and seven days of CSLI from a second carrier, which produced two days of records. *Id.* at 302. But the Court noted that it was sufficient for their purposes to hold that accessing seven days of CSLI was a search for Fourth Amendment purposes. *Id.* at 310 n. 3.

[10] *Id.* at 311 (internal citations omitted).

"[g]iven the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection."[11] Post-*Carpenter*, we recognized that, "[w]hether a particular government action constitutes a 'search' or 'seizure' does not turn on the content of the CSLI records; it turns on whether the government searched or seized "enough" information that it violated a legitimate expectation of privacy."[12] In *Sims v. State*, this Court was considering real-time location information as opposed to historical CSLI but we found the reasoning in *Carpenter* applicable to both kinds of records.[13] And we held that Sims did not have a legitimate expectation of privacy in less than three hours of real-time CSLI records accessed by law enforcement pinging his phone less than five times.[14]

---

[11] *Id.* at 309.

[12] *Sims*, 569 S.W.3d at 645-46 ("There is no bright-line rule for determining how long police must track a person's cell phone in real time before it violates a person's legitimate expectation of privacy in those records. Whether a person has a recognized expectation of privacy in real-time CSLI records must be decided on a case-by-case basis.").

[13] *Id.* at 645.

[14] *Id.* at 646; *see also Holder v. State*, 595 S.W.3d 691, 704 (Tex. Crim. App. 2020) (holding, under the Texas Constitution, that there is a reasonable expectation of privacy in 23 days of historical CSLI accessed by the State without probable cause); *Ford*, 477 S.W.3d at 334-35 (pre-*Carpenter* holding that obtaining four days of CSLI information did not violate the Fourth Amendment because there was no legitimate expectation of privacy).

Geofence warrants, like the one at issue, have been said to "work in reverse" to the traditional search warrant.[15] Geofence warrants generally specify "a location and period of time, and, after judicial approval, companies conduct sweeping searches of their location databases and provide a list of cell phones and affiliated users found at or near a specific area during a given timeframe, both defined by law enforcement."[16] Here, "[i]n the first step, Google would be asked to create an anonymized list of all devices located within the 'target location' during the time period of 2:45 a.m. to 3:10 a.m. on June 24, 2019."[17] The target location was "limited to the house where the offense occurred and a portion of the church property across the street."[18] The target location primarily sought location history data from public spaces.[19] With that information, law enforcement would "analyze

---

[15] *United States v. Smith*, 110 F.4th 817, 822 (5th Cir. 2024) (citing Haley Amster & Brett Diehl, Note, *Against Geofences*, 74 Stan. L. Rev. 385, 388 (2022)). "Unlike a warrant authorizing surveillance of a known suspect, geofencing is a technique law enforcement has increasingly utilized when the crime location is known but the identities of the suspects [are] not." *United States v. Rhine*, 652 F.Supp.3d 38, 66 (D.D.C. 2023).

[16] *Smith*, 110 F.4th at 822 (citing *Geofence Warrants and the Fourth Amendment*, 134 Harv. L. Rev. 2508, 2509 (2021)).

[17] *Wells*, 675 S.W.3d at 822.

[18] *Id.*

[19] The suspects had in fact already been captured in the church's parking lot on surveillance video. *Id.* at 823.

this location data to identify users who may have witnesses or participated" in the offense. Google "would then provide additional anonymized location history outside of the target location for a period not to exceed sixty minutes before and after the last timestamp associated with the device within the target location."[20]  The first step was limited to a 25-minute duration, during the time of the offense, at the location of the offense.  The second step expanded the location but was still limited temporally. The first two steps involved less than three hours of location information.  Given these temporal and spatial limitations, Appellant did not have a reasonable expectation of privacy in the location history data returned.  The State did not seek "enough" information through these steps that it can be said to have violated a legitimate expectation of privacy.[21]  This limited intrusion did not implicate the type of "privacies of life" that were at the center of the Court's concern in *Carpenter.*[22]

---

[20] *Id.* at 822.

[21] *Sims*, 569 S.W.3d at 646 (no legitimate expectation of privacy in physical movements or location as reflected in less than three hours of real-time CSLI); *see also United States v. Chatrie*, 107 F.4th 319, 330 (4th Cir. 2024) (holding there was no reasonable expectation of privacy in two hour' worth of location history data obtained from Google).

[22] *Carpenter*, 585 U.S. at 311 (noting that 127 days of time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familiar, political, professional, religious, and sexual associations and that these location records thus hold the privacies of life).

There is another relevant distinction between the CSLI records at issue in *Carpenter* and the location history information with which we are presently concerned. The Court in *Carpenter* found the CSLI records had not been voluntarily "shared" in the way that term is normally understood.[23] The Court noted the pervasive nature of cell phones in modern society, that cell-site records are created without any affirmative action on the part of the user given that virtually activity on the phone generates CSLI, and concluded that, "in no meaningful sense does the user voluntarily 'assume[] the risk' of turning over a comprehensive dossier of his physical movements."[24] Here, the Google location history data was recorded by Google only if users "opted-in." There was an affirmative action by the user rather than a recording of location information caused by virtually any activity on the phone.[25] Arguably this step suggests a greater assumption of the risk than merely using a cell phone, but I question whether turning on location services to be able to use a particular app or even ask your phone for directions

---

[23] *Id.* at 315.

[24] *Id.* (citing *Smith*, 442 U.S. at 745).

[25] *See id.* (noting that "[a]part from disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data"). Here, on the other hand, at the Fourth Circuit has recognized, "[w]hether Google tracks a user's location . . . is entirely up to the user himself. If Google compiles a record of his whereabouts, it is only because he has authorized Google to do so." *Chatrie*, 107 F.4th at 331.

to a particular location is the same thing as agreeing to be surveilled for an extended period of time. Still, in this case, the information produced in the first two steps of the geofence warrant was not so open ended that it sought a dossier of physical movements. Rather, it captured a device's presence in a discrete location for a short amount of time.

The voluntariness of the disclosure and the limited scope of the data sought support the application of the third-party doctrine, which holds that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."[26] The Court in *Carpenter* declined to apply the third-party doctrine to the CSLI sought concluding that the rationales underlying the doctrine did not support its application because (1) the information was not voluntarily shared and (2) the nature of the information sought.[27] Here, both rationales support the application of the third-party doctrine as to the limited location history data and subscriber information sought. For those records sought in the first two steps, this is not the "rare case" where there is a legitimate privacy interest in the records held by a third party.[28]

---

[26] *Smith*, 442 U.S. at 743-44.

[27] *Carpenter*, 585 U.S. at 314-15.

[28] *Id.* at 319.

But the third step of the geofence warrant sought six months of prior IP history in addition to identifying subscriber information. Judge Yeary acknowledges that the information provided in step three "may suggest access" to more than identifying information. We have previously recognized that a person has a legitimate expectation of privacy in the contents of his cell phone.[29] Unlike brief and limited location history data or subscriber information, months of IP history data has the ability to reveal the "privacies of life."[30] The rationales underlying the third-party doctrine do not hold up when considering months of IP history data. First, the nature of that data is not limited in time or scope and are potentially much more revealing than limited location history data. Furthermore, there is no "opt-in" for the record kept of websites visited or services accessed on a cellphone. Cellphones log IP history whenever the user accesses the internet. This data, like 127 days of CSLI, "provides an intimate window into a person's life," which can provide location as well as "familial, political, profession, religious, and sexual associations."[31] When the information sought is

---

[29] *Granville v. State*, 423 S.W.3d 399, 405-06 (Tex. Crim. App. 2014).

[30] *Carpenter*, 585 U.S. at 311.

[31] *Id.*

not temporally or spatially limited, implicates privacy concerns, and is not voluntarily shared, the third-party doctrine does not overcome an expectation of privacy. The geofence warrant ultimately sought months of historical data in which Appellant had a reasonable expectation of privacy. Thus, I would hold, at a minimum that the third step of the warrant constituted a constitutionally protected search. To clarify, I am not suggesting that the existence of a legitimate expectation of privacy in the IP address information invalidates the entire warrant. Rather, I would hold that the warrant must be based upon probable cause in light of the third step authorized by the warrant. And, as I discuss below, I do not agree that there is probable cause supporting any of the steps authorized by the warrant, especially the third.

## Probable Cause

Today, however, the Court does not decide whether the information sought by the geofence warrant constitutes a search. Rather, it decides the case on the basis of probable cause. In doing so, it virtually ensures that the threshold question will never be answered. Judge Yeary's opinion effectively lowers the burden for law enforcement to obtain a warrant based upon probable cause given the meager amount of information available to police when this geofence warrant

was sought. Even a CSLI case starts with a suspect, but here, law enforcement only had a location.

Given that, I disagree with the court of appeals' conclusion that the warrant at issue was supported by probable cause. To establish probable cause, an affidavit in support of a search warrant must provide a substantial basis for concluding that there is a fair probability that contraband or evidence of a crime will be found in a particular location.[32] Here, the affidavit asserted it was likely that one of the suspects carried an Android phone and that home invasion suspects commonly communicate with someone outside of the residence but provided no other basis for concluding evidence of a crime could be found by searching the Google database. In *State v. Baldwin*, this Court held that in order to conduct a search of the contents of a suspect's cell phone, law enforcement must be able to demonstrate probable cause in the form of a "nexus" between the cell phone and the commission of the offense.[33] Conclusory allegations or conclusions are generally

---

[32] *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

[33] *State v. Baldwin*, 664 S.W.3d 122, 123 (Tex. Crim. App. 2022). Although the geofence warrant at issue involved a search of Google's location history database, ultimately the detectives used the information gleaned to search Appellant's phone without providing any nexus between the phone and the offense beyond boilerplate assumptions about the use of phones in home invasion offenses.

insufficient to establish probable cause.[34]  Applying that understanding to boilerplate language about the use of cellphones among criminals, the Court held that "specific facts connecting the items to be search to the alleged offense are required for the magistrate to reasonably determine probable cause."[35]  Here, there were no specific facts connecting the Google location history database to the alleged offense beyond a conclusory statement about the likelihood a suspect carried an Android phone.  There was no basis for that conclusion.

In *Baldwin*, witnesses identified Baldwin's vehicle leaving the victim's home the day of the murder.[36]  Baldwin was later stopped in the sedan matching the witnesses' description and a cellphone was located inside of the vehicle.[37]  Investigators obtained a warrant to search the phone. The warrant's affidavit noted that available geo-location information may show the location of the suspect at or near the time of an offense and that the investigator knows from "training and experiences that someone who commits the offense of aggravated

---

[34] *Id.* at 132 (citing *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)); *Duarte*, 389 S.W.3d at 354.

[35] *Baldwin*, 664 S.W.3d at 134.

[36] *Id.* at 125.

[37] *Id.* at 126.

assault or murder often makes phone calls and/or text messages immediately prior and after the crime."[38]  The Court rightly held this was not sufficient to establish probable cause.  While we recognized that the witnesses' descriptions and the vehicle's license plate supported a nexus between the vehicle and the offense, "they ha[d] no bearing on whether [Baldwin's] phone [wa]s connected with the offense" because "[t]he affidavit contains nothing about the phone being used before or during the offense."[39]  We reiterated that "[s]uspicion and conjecture do not constitute probable cause."[40]  Without more, we held, boilerplate language about cellphone use among criminals is insufficient to establish probable cause.[41]

Here, the "nexus" provided in the affidavit to connect the cellphone, and the criminal offense was that "[i]t is likely that at least one of the four suspects who committed this offense had an Android device on him during the commission of this offense.  It is common

---

[38] *Id.*

[39] *Id.* at 135 ("The boilerplate language in itself is not sufficient to provide probable cause in this case, nor does the remaining affidavit set forth details in sufficient facts to support probable cause. Considering the whole of the affidavit, there is no information included that suggest anything beyond mere speculation that [the defendant's] cellphone was used before, during, or after the crime.").

[40] *Id.* (citing *Tolentino v. State*, 638 S.W.2d 499, 502 (Tex. Crim. App. 1982)).

[41] *Id.* at 134.

practice that home invasion robbery suspects keep an open line with someone outside of the residence while committing this type of offense to keep an eye out for responding police officers." This amounts to nothing more than boilerplate language about the use of cellphones among criminals.[42] Without more, this is the same type of bare conclusion or speculation about the use of cellphones that does not support probable cause. Nothing in the affidavit suggests, for example, that the phones at issue were anything more than at the target location. There is nothing suggesting they were used during the commission of the offense or captured information regarding the crime.[43]

Judge Yeary concludes that from the affidavit's assertions that "[i]t is likely that at least one of the four suspects . . . had an android" and that it is common in-home invasions for suspects to "keep an open line" with a lookout outside of the residence, a magistrate could have reasonably inferred a "fair probability" that the home invaders carried

---

[42] *Id.* at 123 (While boilerplate language may be used in a search warrant affidavit, to support probable cause, "the language must be coupled with other facts and reasonable inferences that establish a nexus between the device and the offense.").

[43] Certainly, no probable cause was established to support a search of the cell phones or the data held by the cell phones, which the warrant sought when it requested historical IP data. There is a real danger in concluding otherwise that a lowered standard for probable cause will be used to search cell phones and their data with the attendant privacies of life themselves. In fact, in this case, secondary warrants to search the phone accounts identified through this geofence warrant were obtained based upon little more information than that used to justify the geofence warrant.

cellphones. But "a magistrate's action cannot be a mere ratification of the bare conclusions of others."[44] In other words, the affidavit for the search warrant itself cannot simply assert that there is a fair probability or likelihood and that alone be considered sufficient to support a finding of probable cause. Such conclusions must be supported by facts. Even if the magistrate could accept the conclusion offered, the warrant does not include any facts to establish a fair probability that the devices identified were related to the offense.[45] There is nothing more than boilerplate language about the use of cellphones in home invasions.

Judge Yeary's opinion allows for the idea that anyone identified via a device located within the search warrant parameters would necessarily be a suspect or a witness. But by definition a witness is not involved in the crime. Like a general warrant, searching for the identity of a witness presupposes there is no evidence of guilt, and it uses the search itself to generate evidence to test that witness involvement.[46] This is the

---

[44] *Duarte*, 389 S.W.3d at 354 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

[45] Indeed, the surveillance video in this case does not provide any factual support for the "keep an open line" conclusion contained in the warrant affidavit.

[46] *Smith*, 110 F.4th at 836 ("[T]he Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. 'General warrants' are warrants that 'specif[y] only an offense,' leaving 'to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched.") (internal citations omitted).

precise danger created by the way in which a geofence warrant works backwards to gather evidence. There is nothing but speculation to suggest that a potential witness had any information on their phone regarding the crime. Introducing the idea of probable cause to believe that a "witness" has evidence of a crime significantly lowers the specificity required to obtain a warrant.[47] It fails to distinguish between innocent bystanders and suspects. Indeed, one of the people at issue was excluded after this evidence was obtained.[48]

Judge Yeary argues probable cause is supported by the fact that, today, almost everyone possesses a cell phone on his person. Indeed, the Supreme Court in *Carpenter* recognized that people "compulsively carry cell phones with them all the time."[49] And the Court previously characterized cell phones as pervasive.[50] But the Supreme Court's

---

[47] *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005) ("Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the offense on scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found."). Surely, locating and identifying a person near a particular crime scene does not provide sufficient probable cause to search their phone. Here, locating and identifying potential witnesses in and of itself is not contraband nor evidence of a crime.

[48] *Wells*, 675 S.W.3d at 825 ("The first search revealed five devices within the geofence . . . [t]he second stage of the search . . . indicated that two of the devices travelled past the gas station where the suspect's car was recorded on video surveillance. The third stage of the search revealed the identity of the Google account subscribers for the two devices identified as relevant.").

[49] *Carpenter*, 585 U.S. at 311.

[50] *Riley v. California*, 573 U.S. 373, 395 (2014).

acknowledgment of the ubiquitous nature of cell phones was made to acknowledging greater privacy concerns for the data captured by cell phones not as support for greater intrusions.[51]  In any event, the fact that most people carry cellphones does not provide the required nexus to the offense.  That most people carry cellphones without more does not establish a fair probability that evidence of a crime will be discovered by searching phones located near the scene of a crime.

## Conclusion

The warrant in this case did not establish probable cause.  But because the court of appeals erred in the first instance by failing to consider whether Appellant had a reasonable expectation of privacy in the things to be searched, I would remand for the court of appeals to consider that question.  In particular, I believe the court of appeals should consider whether the third step in the geofence warrant amounted to an intrusion into a legitimate expectation of privacy.  I would require the court of appeals to reconsider whether probable cause could justify the search of six months of IP address information under

---

[51] *Carpenter*, 585 U.S. at 311-15 (acknowledging the fact that people compulsively carry cell phones in support of a greater privacy concern for historical cell-site records and that cell phones are a pervasive and insistent part of daily life as a reason not to apply the third-party doctrine to such records); *Riley*, 573 U.S. at 395 (recognizing the pervasive character of cell phones, which "carry a cache of sensitive personal information," as support for not dispensing with the warrant requirement).

that warrant, and, if necessary, whether the second warrant in this case was obtained as a fruit of the poisonous tree.

Filed: April 2, 2025

Publish